## DANIELS & FISHER REALTY CO. v. KENYON.

(District Court, D. Colorado.  August 25, 1919.)

### No. 6859.

1. WILLS ⬦➞476—RULES OF CONSTRUCTION.

   The entire will, including codicils, must be read and considered as one instrument, and its different parts harmonized, if there is no irreconcilable conflict, so that the intent of the testator as disclosed by the whole will may be carried out.

2. WILLS ⬦➞457—CONSTRUCTION OF PHRASES HAVING DEFINITE MEANING.

   Phrases used in a will, to which the law has affixed a definite meaning, must be presumed to have been used in that sense, unless it clearly appears they were not intended to have that meaning.

3. WILLS ⬦➞681(2)—FEE DEVISED TO TRUSTEE.

   Where testator devised to a trustee all his real estate in fee, with power of disposition, and by codicil directed the trustee to keep, retain, and hold title to specified lots during the life of testator's son, who, on attaining the age of 30, should be placed in possession and allowed the rents and profits for life, but other directions, which could not be carried out without title in fee, were left unchanged, the estate of the trustee was not reduced to an estate for the son's life, but remained a fee with the power of disposition curtailed during the son's life.

4. WILLS ⬦➞681(2)—TRUSTEE TAKES ESTATE NECESSARY TO EXECUTE TRUST.

   Where a testamentary disposition is clearly made and a trust created to carry it through, the language used in passing title to the trustee may be restrained, or even enlarged to the extent of permitting the execution of the trust.

5. WILLS ⬦➞506(3)—"HEIR" INCLUDES SURVIVING WIFE.

   Where a testator directed that a portion of his estate should go to the heirs of his son, the widow of the son was entitled to take as "heir," under the Colorado statute providing for descent to the surviving wife.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heir.]

In Equity.  Suit to quiet title by the Daniels & Fisher Realty Company against Sarah M. Kenyon.  On motion by plaintiff to strike the answer and cross-complaint.  Motion overruled.

Pershing, Nye, Fry & Tallmadge, William P. Hillhouse, and Stokes & Sherman, all of Denver, Colo., for plaintiff.

H. A. Dubbs, Henry C. Vidal, and Garwood & Garwood, all of Denver, Colo., for defendant.

LEWIS, District Judge.  This is a suit to quiet title to Lots 13, 14, 15, and 16, in Block 76, East Division of Denver.  The plaintiff claims full and complete title to all of the lots.  The defendant claims to be the owner of an undivided half interest in them, admits that the plaintiff is in possession, and by cross-complaint asks that title to an undivided half interest be quieted in her, and for an accounting for rents and profits received by the plaintiff.  The plaintiff moves to strike the answer and cross-complaint.

Both in arguments and briefs counsel are agreed that a disposition of the motion is dependent upon the construction to be given the last will of William B. Daniels and the powers which it gives the trustee.

The testator is the common source. He died December 23, 1890, leaving an only child and son, William C., then twenty years old, and his estate was closed August 6, 1900. As the answer goes, the only basis for plaintiff's claim is a conveyance by the son after he reached the age of thirty to plaintiff's grantor; but it is alleged that he had only a life interest in the lots, that he died in 1918, and that defendant took an undivided half of the remainder in fee as devisee. William B. Daniels executed his will in September, 1883, and thereafter made a codicil in October, 1885, and another in March, 1887. In form the will is divided into three parts or articles. The first, as numbered, only directs the payment of the testator's debts. The second deals with the appointment of a guardian for the son and the son's education, and names a trustee to take title to the real property and funds to be received from the executor as the proceeds of personal property, and directs the trustee as to final disposition of both. It also embodies all of the bequests and devises, except two in the third article which were to be discharged by the executor. The third article deals exclusively with personal property. Its provisions will be first noted. It names the executor and provides for the administration of the chattel estate, it directs him to pay all debts, to deliver all pictures, paintings, books and jewelry to the son, to sell all furniture, household goods, fixtures and furnishings, all horses, vehicles, harness and personal property not belonging to the testator's business, it provides that if the testator has retired from the mercantile business at the time of his death, or shall at that time be carrying on the business without a partner, the executor shall convert all of the personal estate into money with all convenient speed, and out of it pay two legacies given in article three, discharge the testator's debts, the expenses of administration, and pay over the residue to the trustee. But if at the time of the testator's death he be still engaged in the mercantile business with one or more partners the executor is directed to continue to carry on the business until the usual time of taking the next invoice of the stock, and if at that time satisfactory arrangements can be made with the surviving partners the executor may continue to conduct the mercantile business until the son arrives at the age of twenty-seven years, and at the end of that time the interest of testator's estate in the mercantile business shall be converted into money as speedily as possible, without too great a sacrifice of the business, and paid over to the trustee, provided, however, that after the son reaches the age of twenty-one years he shall be permitted to take and continue the said business with the consent of the partners, and in that event, instead of converting the same into money the executor shall turn over and transfer all interest in the mercantile business to the son as his own property, to have and to hold the same unto himself, his heirs, assigns and legal representatives forever.

The second article names Mitchell Benedict as trustee of the estate. It runs thus:

"And to the said Mitchell Benedict as trustee I hereby give, devise and bequeath all the real estate of which I die possessed, and the rents, issues and profits thereof, and so much of my personal estate as shall by this my will

be directed, from time to time, to be paid over to him, to have and to hold the same in trust for the following purposes to wit:

\* \* \* \* \* \* \*

"7th. To pay to my said son when he shall have attained the age of thirty years, or make over to him by payment, assignment, conveyance or otherwise, all the estate then in the hands of my said trustee, whether real, personal or mixed, save and except the real estate known as Lots 13, 14, 15, and 16, Block 76, in the East Division of the City of Denver, Arapahoe County, Colorado.

"8th. To keep, retain and hold the title to the said last-named real estate during the natural life of my son, but from the time of my son's attaining the age of thirty years, as aforesaid, to give to him the possession thereof and leave to him the entire control and management thereof, and to allow him the rents, issues and profits thereof for his own use and benefit so long as he shall live, without let or hindrance or interference in any manner whatsoever.

"9th. In case of the death of my said son leaving lawful issue, being a child or children him surviving, then to pay to or make over to such child or children the same monies or property which otherwise would be paid to or made over to my said son as aforesaid.

"10th. In the event of the death of my son without his leaving him surviving any such child or children, then to pay to or make over as aforesaid to the said Sarah M. Kenyon, or to her heirs, one-fourth of all the estate then being in the possession and control of my said trustee, the remaining three-fourths thereof to be by my said trustee disposed of in such a manner as may be directed by the last will and testament of my said son, by him made after he shall have attained the age of twenty-five years, but if he die without leaving any such will and leaving no such child or children but leaving a widow, then to pay to and make over to such widow what my said trustee shall consider a full one-third of the said remaining three-fourths of said estate. And another one-third of said three-fourths my said trustee shall pay or make over as aforesaid to Henry Martyn Hart. \* \* \* And the residue of the said estate so remaining I hereby direct shall be paid or made over to those who then are the heirs of my said son, but if my said son shall die leaving no such child or children, and no such will and no widow, then the share which is above directed to be paid to such widow shall also go to the said Hart. \* \* \* I hereby give and grant unto my said trustee full power and authority to sell, grant, bargain, convey and dispose of all the estate, real, personal or mixed, which may come into his possession and control, in such a manner from time to time as to him shall seem meet and proper."

The second article also made other bequests to be discharged by the trustee, among them:

"To pay to my sister, Mrs. Sarah M. Kenyon, of Iowa City, State of Iowa, ten per cent. of the net income of all the estate in the hands and possession of my said trustee, from time to time yearly, every year during her natural life," etc., "to my nephew, William D. Kenyon, \* \* \* $1,000.00: \* \* \* Provided however, if that sum shall be more than five per cent. of my estate in the possession and control of my trustee at that time, then the amount to be paid him shall be five per cent. of such estate and no more," to pay over to my said son when he shall arrive at the age of twenty-one years the sum of $5,000.00, and "thereafter to pay him also all the net income of my estate in the possession and control of my said trustee," etc.

The son died at the age of forty-eight. When he attained the age of thirty years the trustee made over and conveyed to him all of the estate except the four lots. The answer alleges that shortly thereafter the son conveyed the four lots and other real property to plaintiff's grantor for a recited consideration of $200,000, and in a subsequent deed made in 1910 the son and his wife conveyed to the plain-

tiff's grantor the four lots, habendum during the lives of the son and his wife,

"and thereafter to enjoy and possess the same, and every part thereof, as devisee and appointee of William Cooke Daniels, under his last will and testament; and the said William Cooke Daniels, one of the parties of the first part, does hereby promise, undertake and agree to and with the party of the second part, in consideration of the premises, that he will by his last will and testament give and devise unto the party of the second part all the right, title and interest in and to said real property which, under the will of William B. Daniels, deceased, and in and by the terms of said will he, the said William Cooke Daniels, has been given power to give and devise, and will under the power given to him by the will of William B. Daniels, deceased, appoint the said party of the second part to take and hold said real property forever, and for its own use and benefit, and will direct by the terms of his last will that the trustee under the will of William B. Daniels, deceased, or his successor in trust, shall, under the will of William B. Daniels, deceased, convey unto the party of the second part all the right, title and interest in and to said real property remaining after the death of William Cooke Daniels."

It is alleged that the son died testate by will of date April 21, 1916, but that he did not exercise the power of appointment given to him by his father's will, and that he died without issue, his wife surviving him.

[1-3] The respective contentions are these: By the plaintiff, that although the opening part of the second article devised the lots to the trustee in fee, nevertheless, that was cut down to a life estate in the trustee by the first codicil, which changed the eighth section of article 2 so that it reads: "To keep, retain and hold the title to the last-named real estate (the four lots) during the natural life of my son, but from the time of my son's attaining the age of thirty years, as aforesaid, to give to him the possession thereof and leave to him the entire control and management thereof, and to allow him the rents, issues and profits thereof for his own use and benefit so long as he shall live, without let or hindrance or interference in any manner whatsoever;" that this also gave to the son a life estate in the lots, that under the Statute of Uses there was a merger of the two estates, and that the estate in trust having terminated there was an immediate reversion of the fee to the testator, and that the son took by inheritance. By the defendant, that notwithstanding the change by the codicil there was no intention on the part of the testator to cut down the fee previously granted in trust to a life estate in the trustee in view of the other provisions of the will, and secondly, even conceding the meaning of the codicil to be as contended for by plaintiff, yet the purposes of the trust are such that they cannot be executed as it is clearly intended they should be, unless the trustee retain the title to the lots after the death of the son, and in that condition the law makes the implication, notwithstanding the language used, that the trustee holds in fee if that be necessary for the execution of the trust.

As to the first proposition it may be said that the entire will, including the codicils, must be read and considered as one instrument, its different parts harmonized, if there is not irreconcilable conflict, so that the intent and purpose of the testator, disclosed by the whole will, may be carried out; such intent and purpose, however, must be obvious from the language used by the testator, and if phrases are used to

which the law has affixed a definite meaning it must be presumed that they were used in that sense unless it clearly appear they were not intended to have that meaning. This, I take it, is the rule to be applied to all instruments. Justice Thompson said, in Jackson v. Kip, Fed. Cas. No. 7,138:

"And in applying this rule, the intention is to be collected from the whole will, and not from detached parts; and effect must be given to all the words in the will without rejecting or controlling any of them, if it can be done by a reasonable construction not inconsistent with the manifest intent of the testator. When any technical words are used the meaning of which has been settled by usage, and sanctioned by judicial decisions, they are presumed to be used in the sense the law has appropriated to them, and must have their technical effect, unless a contrary intention is manifest; but when such intention is plain, it will control the legal operation of words, however technical. * * * There can be no doubt but that where there is a lapsed devise, for the want of a devisee answering the description in the will, or where there is an irreconcilable repugnancy or uncertainty in the disposition made by the testator, so that his real intention cannot be ascertained, the estate will descend to the heir-at-law; * * * but a devise is never construed absolutely void for uncertainty, but from necessity. If there is a possibility to reduce it to certainty, the devise is held good."

In the forepart the title in fee was given to the trustee for the purposes named, both by the original will and as it remained after the codicils. Also the original will gave the trustee power of disposition of all of the real estate at his discretion, and that remained after the codicils. But that power given elsewhere was undoubtedly cut down by the codicil, so that the trustee could not dispose of the four lots until after the son's death, otherwise if he had conveyed them before the son reached thirty he could not have let the son in when he reached that age, and if permitted to exercise that power while the son was in the fee would have been of uncertain value, dependent upon the life of the son; but the restriction on the power of alienation by the trustee would pass with the son's death if the title in the trustee were not expressly limited to that time. So that the question arises, whether the phrase in the eighth section, "To keep, retain and hold the title to the said last-named real estate during the natural life of my son," shall be held to cut down the fee given in the forepart to the trustee to an estate in the trustee for the life of the son, or whether it should be construed, when taken with the remainder of that section and the general power of disposition given to the trustee, to be only a withdrawal of that power during the life of the son. The latter impresses me as being the more reasonable purpose, and within the clear meaning of the phrase. I can conceive of no more apt expression for that purpose. It is equivalent to saying that during the life of the son the lots should not be disposed of by the trustee. When we attempt to apply them to the purposes contended for by the plaintiff there is at once doubt. They do not expressly indicate a purpose to cut down the fee given the trustee in the forepart, and the words themselves are not apt to that end. "To keep, retain and hold" is a command to non-action, for the time specified, by one to whom the fee had been given. Besides, if we take them as a limitation on the trustee's power of disposal until after the son's death we bring the eighth section into har-

mony with the clear intention of·the testator expressed in the tenth. Otherwise the latter is destroyed and wholly eliminated. And this is in. keeping with the general plan in the mind of the testator shown by the original will, and maintained throughout. Sections 7 and 8, as we there find them, directed the trustee to pay to and make over to the son, by conveyance or otherwise, when .he attained the age of thirty years, one-half of the entire estate then in his possession and control, and to keep the remaining half so that the same shall, during the natural life of the son, produce as much revenue and income as possible in the judgment of the trustee, and to pay the net income over to the son quarterly. These. sections were changed by the codicil requiring the trustee to turn over to the son, when he reached the age of thirty, all of the estate then in his hands except the four lots, to give the son possession of the four lots at that time and allow him to occupy them and receive the rents so long as he shall live, and that the trustee keep, retain and hold the title thereto during the natural life of the son. Section 10, however, remains throughout as found in the original will, unchanged by the codicil. The original intent continued, to dispose of the remainder of his estate to the persons named in the tenth section, if the conditions therein set forth should arise.

But the plaintiff, to sustain its contention brings in, in aid of the construction which it places on the forepart of the eighth section, the words in the tenth section: "To the said Sarah M. Kenyon, or to her heirs, one-fourth of all the estate *then being in the possession and control* of my said trustee;" and says that these lots which had been turned over to the son during his life could not be in the possession and control of the trustee at the time of the son's death. It will be noted that the. property disposed of in this section is not one-fourth of the real estate then in the possession and control of the trustee but one-fourth of "all the estate." The estate consisted of an interest in large personal assets. The testator had in mind and specifically named his stock of merchandise, one of the largest establishments of the kind in Denver. He had provided that that business might be continued by his executor until the son reached the age of twenty-seven years. If that business had been carried on for that length of time by the executor, and the son had died shortly after·attaining the age of thirty years, there would have probably been a very large fund arising from its sale in the possession and control of the trustee. The same expression is used in other parts of the will in referring to personal property, money, to be paid over to legatees by the trustee. It undoubtedly covered both kinds of property, but was not used with the restricted meaning now claimed for it, and as additional manifestation of an intent to limit the title in the trustee to the life of the son.

[4] But giving to the phrase all that plaintiff claims for it, conceding that·no other meaning can be attached to it than a clear intent and purpose to cut down the fee in the trustee to an estate for the life of the son, still the second contention of the defendant must be sustained. There can be no doubt of the intent and purpose of the testator, as disclosed in the tenth section. In it he named certain beneficiaries; he set out clearly the conditions under which he desired them to take;

he named the proportions in which they should take. They were the objects of his bounty; and if those conditions have now arisen the bequests there made cannot be permitted to fail on account of the character of the estate vested in the trustee by the will. If a testamentary disposition of property is clearly made and a trust created to carry it through the language used in passing title to the trustee may be restrained, if need be, or even enlarged to the extent of permitting the execution of the trust, where to hold otherwise would cause it to wholly fail. Perry on Trusts (5th Ed.) § 312, says:

"The extent of the legal interest of a trustee in an estate given to him in trust is measured not by words of inheritance or otherwise, but by the object and extent of the trust upon which the estate is given. On this principle two rules of construction have been adopted by courts: First, wherever a trust is created the legal estate sufficient for the purposes of the trust shall, if possible, be implied in the trustee, whatever may be the limitation in the instrument, whether to him and his heirs or not. And second, although a legal estate may be limited to a trustee to the fullest extent as to him and his heirs, yet it shall not be carried farther than the complete execution of the trust necessarily requires."

Circuit Justice Curtis, in Ward v. Amory, Fed. Cas. No. 17,146, said:

"It is a settled rule that trustees take and hold under a will just that quantity of interest necessary to enable them to discharge the duties of their trust."

The rule was announced and applied in Young v. Bradley, 101 U. S. 782, 25 L. Ed. 1044. This principle of law requires that the motion be overruled.

[5] The defendant claims that she took not only the fourth specifically given to her by the tenth section, but alleges in her answer that she is the sole heir of William Cooke Daniels, and hence she claims under the latter part of that section another fourth. It is alleged that William Cooke Daniels died without issue but leaving his wife surviving him. "Heir" is a technical word, and means the person or persons named by the law to succeed to the estate in case of intestacy. The question, as I view it, therefore turns upon a provision of the local statute as to whom real estate descends on the death of a husband without issue, his wife surviving him. The Colorado statute provides that when a person having title to any real estate or property dies intestate leaving a wife surviving and no child, nor descendants of any child, then the whole estate of such intestate, real and personal, shall descend to and vest in such surviving wife as her absolute estate, subject to payment of debts. I conclude that the widow of William Cooke Daniels took the quarter-interest in the lots under the tenth section of the will as the sole heir of her deceased husband.

An order will be entered overruling the motion.