## CODY *v.* RAYNAUD.

JURISDICTION OF PROBATE COURT *in foreign county.* Section 2, chapter 70, Revised Statutes, 500, applies to actions brought in probate courts.

PLEADING *in action where defendant resides in foreign county.* It is not necessary to aver in the declaration the facts which will give the court jurisdiction over a defendant who resides in another county.

JURISDICTION — *want of* — *must be pleaded in abatement.* If the court has not jurisdiction of the person, the defendant must plead that fact in abatement, and she cannot raise the question by motion.

JURISDICTION OF PROBATE COURTS. Probate courts are of limited but not inferior jurisdiction.

CONTRACT, EXPRESS — *may be abandoned for cause.* A party may for good cause, and where the fault is not his own, abandon a special contract and recover the value of services upon an implied assumpsit.

CONTRACT, EXPRESS — *if abandoned, plaintiff must resort to implied.* In such case the law raises a contract for the protection of the innocent party, and the express contract is not involved except for the purpose of ascertaining whether there was cause for abandoning it.

CONTRACT, EXPRESS — *abandoned without cause.* Where a special contract was entered into, by which the plaintiff agreed to serve the defendant for the

term of one year, if the plaintiff voluntarily and without the fault of the defendant quit the service of the defendant, she cannot recover.

*The special contract being shown,* it ought to appear that there was sufficient cause for abandoning it.

EVIDENCE *of abandonment of contract.* As to the cause for abandoning a special contract it is not enough that a witness should testify that plaintiff quit defendant's employment because of abusive language and bad treatment. Specific acts of defendant should be proved.

EVIDENCE *of acquiescence in plaintiff's demand.* Where the plaintiff proved a contract for service which had not been performed, and it appeared that at or about the time the plaintiff quit defendant's service the defendant requested the plaintiff to remember that she had left and had not been discharged, the circumstance that the defendant made no objection to a bill for services rendered, which was subsequently presented by the plaintiff, is not sufficient to show an agreement on the part of defendant to pay the same.

## *Error to Probate Court, Arapahoe County.*

THE declaration contained the common counts for work and labor and the money counts.

At the trial plaintiff read the deposition of Anna Lemon, who testified in substance, that in March, 1869, in New York city, the defendant entered into a contract with the plaintiff, by which she employed the plaintiff to go to Denver and work for her at the rate of $50 per month for the term of one year; also that defendant agreed to pay plaintiff's traveling expenses in going to Denver.

Plaintiff also read the deposition of Wm. E. White to the same effect, except that he stated that the plaintiff was to receive $40 per month for the term of one year, and that the plaintiff was to receive her traveling expenses if she remained with defendant the full year, otherwise the traveling expenses were to be deducted from plaintiff's salary.

Alice Mulchinock testified: "I was in Mrs. Cody's employment at the time Madame Raynaud left, and afterward Madame Raynaud left Mrs. Cody on or about July 3d, 1869; she came in the store at Central City, Colorado Territory, afterward, and asked Mrs. Cody to settle with her; Mrs. Cody asked her what the amount was, and she (Mrs. Raynaud) calculated it in my presence at $50 per month, for three months and one week; Mrs. Cody made

VOL. I.—35

no objections at the time to Mrs. Raynaud about the amount; she said to me after Mrs. Raynaud left that she did not know how she (Madame Raynaud) had got it up to that, for you know (speaking to witness) it was only forty per month. I said I did not know it because I was not present at the agreement; that she (Mrs. Cody) had told me so, but Mr. White had told me it was $50 per month. That was all the conversation.

Question by plaintiff's counsel:

Did Mrs. Cody make any objections there in the presence of Mrs Raynaud to paying her? Answer: She only said she would deduct her traveling expenses; I do not remember the amount of Madame Raynaud's bill. She calculated at the rate of $50 per month. It was for three months and one week. She (Madame Raynaud) left on Saturday, July 3, 1869, and called on Mrs. Cody Monday, July 5, 1869. I was present on Saturday when Mrs. Raynaud left. I had been in Mrs. Cody's employment from May 2, 1869, to then, and continued in her employment to August 2, 1869; Mrs. Raynaud left on account of Mrs. Cody's abusive language; I told Mrs. Raynaud to go on that day; there was no reason for Mrs. Cody to use such language.

Question: State just what Mrs. Cody told you she was paying Madame Raynaud? Answer: She stated to me that she was paying her ten per week. Mrs. Raynaud was in the employment of Mrs. Cody at Central City, when I came there, and remained in her employment until July 3d. Mrs. Cody told me she sent Madame Raynaud to Central because business was better there than in Denver. Madame Raynaud had gone to Central before I came to Denver.

Cross-examined by defendant's counsel: Madame Raynaud left the employment of Mrs. Cody because she was badly treated. She was not discharged, Mrs. Cody did not tell her to go, but she was so badly treated it was impossible for her to stay.

Question: After Madame Raynaud left and came back, on July 5th, do you remember that Mrs. Cody stated to her

that she had left, and she (Mrs. Cody) had not discharged her, and do you remember the reply Mrs. Raynaud made?

Answer : Mrs. Raynaud made no reply. I am sure 'Mrs. Raynaud's bill, when presented to Mrs. Cody, was for three months and one week, and she calculated it at $50 per month. She so stated to Mrs. Cody in my presence. I have a suit pending against Mrs. Cody, and have no very kind feelings for her. On several occasions Mrs. Cody abused Mrs. Raynaud in my presence, on one occasion Mrs. Raynaud got so sick on account of it that she had to go to bed, and got to spitting blood. She was not subject to any pulmonary disease. I never heard her use any abusive language to Mrs. Cody.

Re-examined : It was on the day Madame Raynaud left that Mrs. Cody said to her : "Madame Raynaud you will remember that you have left, and I have not discharged you." It was on the following Monday, July 5, that Madame Raynaud called on Mrs. Cody and presented her · bill, and all that Mrs. Cody then said was, that she would deduct her, Madame Raynaud's, traveling expenses. Mrs. Cody did not state to Madame Raynaud what the amount of her traveling expenses were ; all she stated was, that she would deduct the amount of her traveling expenses. Mrs. Raynaud presented her bill for the full amount, and Mrs. Cody made no objections, except she said she would deduct her (Mrs. Raynaud's) traveling expenses."

Mr. DANIEL SAYER, for plaintiff in error.

Mr. S. E. BROWNE, for defendant in error.

HALLETT, C. J. This was assumpsit in the probate court of Arapahoe county, for work and labor.

Plaintiff in error, who was defendant in the court below, was served with summons in Gilpin county, and the first assignment of error questions the power of the probate court to issue process to that county.

The jurisdiction of probate courts in civil actions, when the sum in controversy does not exceed $2,000, was first

conferred by the legislative assembly in the year 1864.   By the fifth section of that act, it was declared that the probate courts named should have concurrent jurisdiction with the district courts in all civil cases at law and in equity, where the debt or sum claimed should not exceed $2,000.   By the sixth section the rules of practice of the district courts were made applicable to probate courts, and by the ninth section the probate courts are declared to be courts of record, and "they shall have a seal, and in their respective counties shall possess all the powers now vested in the district courts in this territory in all matters in controversy where the debt or sum claimed does not exceed $2,000."

This act did not comprehend the probate court of Arapahoe county, but in the following year an amendatory act extended the provisions of the first to all probate courts in the territory except that of Gilpin county.   In section three of this last act jurisdiction was again conferred upon probate courts, but in language different from that of section five of the act of 1864, the words "concurrent jurisdiction with the district courts" being omitted from the act of 1865. But we doubt whether this omission is of any importance. The latter act comprehends "all actions, suits and proceedings at law brought for the recovery of money not exceeding in amount the sum of $2,000," and this jurisdiction is as plainly concurrent with the district courts as if it were so expressed.

One of the purposes of the act of 1865 was to withdraw from probate courts the equity jurisdiction conferred by the act of 1864, and to this end new language was used in conferring jurisdiction, which differs of course from that used in the first act, but not significantly, except as to the purpose which the assembly had in view.

It is to be observed also, that section 9 of the act of 1864, which gives to probate courts, within the limits prescribed to them, all the powers conferred upon district courts, was not expressly or impliedly modified by the act of 1865, and the same is true of the sixth section of the first

act, which applied the practice of the district courts to the probate courts.

We are, therefore, clearly of the opinion that the second section of chapter 70, Revised Statutes, which prescribes the venue of civil actions is applicable to such actions in probate as well as district courts. By that section in certain cases actions may be brought in a county in which the defendant does not reside, and the summons served in the county of his residence. And of late it has not been thought necessary to aver in the declaration the facts which will give the process such extra-territorial force. *Kenney* v. *Greer*, 13 Ill. 432 ; *Hamilton* v. *Dewey*, 22 id. 490.

These cases also show that the question of jurisdiction is raised by plea in abatement and not by motion as was attempted in this case.

Much was said at the bar upon a question which was determined by this court in the case of *Davis* v. *Cass*. Probate courts are of limited, but not inferior, jurisdiction.

We are unable to deny the jurisdiction of the court below, and we will now consider the sufficiency of the evidence to support the judgment.

It appears from the evidence, that, in the month of March, 1869, defendant in error agreed with plaintiff in error to work for her one year as a milliner, and that she left the service of plaintiff in error after working a little more than three months. This special contract is not set out in the declaration, and if it were it is difficult to see how defendant in error could recover upon it, since it was never performed.

But a party may, for good cause and when the fault is not his own, abandon a special contract and recover the value of services upon an implied assumpsit. *Lantry* v. *Parks*, 8 Cow. 63 ; *McClure* v. *Secrist*, 5 Ind. 31; *Eldridge* v. *Rowe*, 2 Gilm. 91.

In such case the law raises a contract for the protection of the innocent party, and the express contract is not involved, except for the purpose of ascertaining whether there was cause for abandoning it.

Perhaps the price fixed by the express contract may be of some value on arriving at the compensation to be awarded under the implied contract, but the parties are not bound by it.

The measure of damages is the value of the services or materials furnished, and the aggrieved party is no more bound by the contract price than by the other provisions of the instrument.

If the defendant in error quit the service of the plaintiff voluntarily and without the fault of the latter, she cannot recover, and the special contract being shown, it ought to appear that there was sufficient cause for abandoning it. Upon this point the evidence is insufficient. A witness testified that defendant in error left the service of plaintiff on account of abusive language and bad treatment, but this is the opinion of the witness and no evidence that such language was used or that plaintiff's treatment of defendant was bad. The cause upon which defendant in error quit her employment is a fact to be proved by testimony of specific acts of plaintiff toward defendant, and not by such testimony as this. Evidence was given of a demand for wages by defendant upon plaintiff in error with a view to show the latter's acquiescence in the justice of that demand. In our opinion the conduct of plaintiff in error upon that occasion will not warrant such an inference.

The judgment of the probate court is reversed, with costs, and the cause remanded for a new trial.

*Reversed.*