## No. 12,550.

McLEAN et al. *v.* JONES, ADMINISTRATOR et al.

(8 P. [2d] 261)

Decided January 25, 1932.  Rehearing denied February 23, 1932.

Messrs. STARK & IRWIN, Messrs. TOLLES & COBBEY, for plaintiffs in error.

Mr. ROBERT J. PITKIN, Mr. LOUIS P. ERNY, Messrs, HERR, BAYLEY, CROSON & INNIS, for defendants in error.

*En Banc.*

214

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THE plaintiffs in error are Edward D. McLean and Maud Wilson; they will be referred to hereafter as plaintiffs. The defendants in error are Llewelyn Jones, administrator with the will annexed of the estate of John M. Wilson, deceased, May Wilson Finnie and Lafayette A. Wilson; they will be referred to hereafter as defendants. Plaintiffs brought suit to recover an interest in the estate of said deceased. Upon trial to the court and a partial recovery in plaintiffs' favor, plaintiffs assign errors and defendants allege cross-errors.

August 14, 1881, John M. Wilson, a widower, married Elizabeth McLean, a widow. They lived together as husband and wife in Denver until she passed away. She died September 12, 1920, and he on November 23, 1928. He had two children by a former marriage; they are May, now May Wilson Finnie, and Lafayette A. Wilson; these two are defendants, joined with Jones, the administrator. Elizabeth Wilson (formerly Elizabeth McLean) had a son by her former marriage, Edward D. McLean, one of the plaintiffs. John M. Wilson and his wife, Elizabeth, had a son as a result of their marriage, John C. Wilson, who was born in December, 1883, and died on September 17, 1928, without issue, leaving as his sole heir, his wife, Maud Wilson, the other plaintiff.

To summarize the alignment of the parties: McLean and Maud Wilson, plaintiffs, respectively the step-son and daughter-in-law of John M. Wilson, deceased, contend for a distributive share in the estate of said deceased by virtue of alleged contract. On the other hand, May Wilson Finnie and Lafayette A. Wilson, defendants, children of decedent's own blood, claim the entire estate under their father's last will and testament. No question of heirship is involved, except to explain the relationship of the parties.

Plaintiffs allege that in the year 1896, the couple, John

M. and Elizabeth Wilson, agreed to make reciprocal wills, whereby each would will to the other a life estate in their respective property interests, with remainder to their son, John C., and their several children, Edward, May and Lafayette, share and share alike, except that Edward would also take certain real estate on Elati street in Denver, known as lot 5, and the south ½ of lot 4, block 3, M. Sumner's addition, of the value of about $2,000. Plaintiffs averred that the Elati street property was the product of some money left to Edward by his father, Donald McLean.

Plaintiffs further allege that John M. and Elizabeth Wilson made their several wills as mutually agreed; that since she died first, he received the benefits, but that thereafter, on September 27, 1928, while John M. was with his daughter, May, in Seattle, Washington, he executed a new will, whereby he left two-thirds of his property to May and one-third thereof to his son, Lafayette, in breach of his agreement with his deceased wife, whereof plaintiffs complain. The last mentioned will was admitted to probate in Seattle and Denver, and is the one that defendants seek to uphold.

Two other items are set forth in plaintiffs' complaint. It is alleged by them that in the year 1922, Edward D. McLean, John C. Wilson (now deceased), May Wilson Finnie and Lafayette A. Wilson executed quit claim deeds to John M. Wilson, covering residence property at 4159 Vallejo street in Denver, also known as lots 1, 2, 3, and 4, block 3, J. S. Henrick's subdivision. This is where John M., Elizabeth and the children formerly lived. The grantee thereafter realized the sum of $8,000 from the sale of such property. Plaintiffs claim that the grantors executed such deeds without consideration; that it was done so that the grantee might have a free hand in improving and disposing of it, but that the deeds were intended to convey only a life estate; that subject thereto the property or the proceeds thereof belonged to the

grantors, share and share alike, and that plaintiffs' interest therein amounted to the sum of $4,000.

Plaintiffs also alleged that in March, 1928, John M. Wilson delivered to May Wilson Finnie two promissory notes executed by Gerald Alley, one for $1,500 and another for $2,500, secured by trust deeds to real estate, but that John M. Wilson had no right to give such note to May; that thereafter they were a part of the assets of his estate, and that plaintiffs were entitled to the sum of $2,000 and interest, being one-half of the value of the notes. Plaintiffs prayed that it be paid to them out of the assets of John M. Wilson's estate, to be charged to May Wilson Finnie's distributive share.

Our attention is not called to any inventory in the estate of Elizabeth Wilson, but it sufficiently appears that at her death she held title to the above realty on Vallejo street, and that she willed a life estate therein to John M., with remainder to his three children and her son. As will be presently seen, the trial court protected the interests of the remaindermen in the proceeds derived from the sale of the Vallejo street property.

Elizabeth Wilson also willed her personal property to John M., but provided that "all of the personal property left him [John M.] by me [Elizabeth] and not previously expended by him," was to go to the four children. John M. received from the proceeds of Elizabeth's estate, the sum of $2,948.75 and a promissory note in the sum of $1,500. We are not informed either as to how much of this cash and personalty (derived through Elizabeth) John M. had left when he died, or how much of it he actually expended during the eight years intervening between her demise and his, but plaintiffs do not make claim to such residue; as stated, their claim is for a distributive share in the estate of John M. Wilson, deceased, from whatever source derived. The inventory in the matter of his estate shows bank deposits and various other items of personal property of the value of $11,481.59, besides secured notes and accounts amounting to $19,227.50; total

$30,709.09. Naturally, the inventory does not disclose the source from which such property was obtained, if this were material.

The court found and decreed that the allegations of the complaint concerning the making of a contract in the year 1896, by John M. Wilson and his wife, and the making of wills pursuant to such contract were not sustained by the evidence, but held with plaintiffs concerning the agreement relating to the property on Vallejo street, and awarded the sum of $2,000 each, to be paid to plaintiffs and the two individual defendants respectively, being a total of $8,000, to be segregated and paid out of the assets of the John M. Wilson estate. The court did not grant plaintiffs' prayer concerning the notes given by said decedent in March, 1928, to his daughter, May.

1. Defendants rely upon *Brown v. Johanson*, 69 Colo. 400, 194 Pac. 943, which holds that an agreement of husband and wife to make reciprocal wills is binding under the facts proven in that case. It is to be distinguished in the following particulars: There, the findings were that there was such a mutual agreement, but here, that there was no such agreement; there, that the husband and wife executed wills pursuant to agreement, but here, that they did not. Even if John M. and Elizabeth Wilson did so agree, nevertheless, on July 6, 1920, Elizabeth Wilson deeded the Elati street property to her son, Edward D. McLean, and on August 29, 1927, McLean deeded it to a stranger, Don F. Cowell. Assuming the existence of an agreement to make reciprocal wills, Elizabeth breached her contract by extinguishing John M. Wilson's life estate in such property. There is evidence to show that he got the rents before McLean's sale of such property to Cowell, but none that John M. received any rent or use of the property thereafter. Whatever the amount may have been, John M. was deprived to that extent of such benefits, which creates another distinction from the case of *Brown v. Johanson, supra.* It is a pleasure to be able to say from the record that the conjugal

relations between John M. and Elizabeth were lovingly maintained until her demise, but this does not affect the rule of law that her breach of contract, if there was a contract, released him from his obligations thereunder.

2. The alleged agreement of 1896, if sustained, would defeat the will and purpose of John M. Wilson, deceased, as expressed in his last will and testament. Evidence in support of such agreement consisted in the main of oral testimony concerning conversations said to have taken place between the husband and wife, long prior to their demise. Neither of them can speak for themselves, for they are both in their graves. Such testimony of oral statements against interest has been often characterized as "the weakest of all evidence." *Goodrich v. Union Oil Co.,* 85 Colo. 218, 227, 274 Pac. 935; *Lambrecht v. Poudre Valley Nat. Bank,* 83 Colo. 387, 399, 265 Pac. 901; *Piggott v. Brown,* 79 Colo. 11, 16, 243 Pac. 626; *Fellhauer v. Fellhauer,* 75 Colo. 358, 362, 225 Pac. 844. Plaintiffs' testimony in this regard was indeed so weak that we need not go further to consider defendants' objections on the ground of its inadmissibility on account of the interest of witnesses in the outcome of the suit. Even granting that certain witnesses, whose testimony of like character was rejected, would have testified according to plaintiffs' proffer, it would not disturb our confidence in the findings of the court.

3. As to the promissory notes delivered to May Wilson Finnie by her father, John M. Wilson, now deceased, the question is immaterial since plaintiffs have no interest in the estate other than that allowed them, the assets are sufficient to discharge their claims and no one else complains.

4. If the trial court had found other than it did concerning the agreement relating to the property on Vallejo street deeded to John M. Wilson in his lifetime, we cannot say that we would have disagreed with the court, but there was sufficient testimony to justify the conclusion as reached. The trial judge saw and heard

the witnesses, and we shall not interfere with the judgment.

We have considered all objections of the parties, but find no error in the record.

Judgment affirmed.