## No. 13,688.

BALLOU *v.* FIRST NATIONAL BANK OF COLORADO SPRINGS
ET AL.
(53 P. [2d] 592)

Decided December 23, 1935.

Mr. J. E. LITTLE, for plaintiff in error.

Messrs. HANEY & JACKSON, Mr. CHARLES J. SIMON, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS action was brought by Marie Estelle Ballou to compel specific performance of an alleged oral contract entered into by one Helen L. Ballou, now deceased, whereby the latter, as plaintiff avers, agreed to make a will in which she would leave to plaintiff certain property. Reference will herein be made to Marie Ballou as plaintiff. The defendant, First National Bank of Colorado Springs, is administrator with the will annexed of the estate of said Helen L. Ballou, deceased, and defendant Marie Louise Biggar, is sole legatee and residuary beneficiary under the will. Plaintiff is a daughter-in-law of deceased. Trial was to the court on the merits; judgment was entered against plaintiff, and she assigns error.

The deceased left a will, executed June 20, 1916, by which she devised her property, valued at about $35,000, in equal shares to her daughter, Marie Biggar, defendant herein, and her son, Kingsley Ballou, the deceased husband of plaintiff, the death of the son having occurred April 20, 1920, about ten years prior to the death of his mother, the testatrix. This will was admitted to probate

February 20, 1930, its validity as a will not being questioned. Plaintiff appeared in the course of administration, and filed two claims against the estate of decedent, but made no attack on the will. Her claims being disallowed, she instituted this action in the district court April 18, 1933, more than three years after issuance of the letters of administration.

After alleging the death of Helen Ballou, as of date February 16, 1930, and the probation of her will, the pertinent allegations of plaintiff's complaint are, briefly: That for about twenty years prior to her death, Helen Ballou had extensive property interests; that her health was poor and that she required constant care; that during that time, plaintiff was the wife of deceased's son Kingsley, who died April 20, 1920; that from 1907 to 1920, at the request of deceased, plaintiff performed services for her from time to time and traveled with, and cared for her abroad; that she had general charge of deceased and her business affairs, for which services so rendered deceased promised to pay; that on October 1, 1912, during plaintiff's absence from Colorado Springs, and without her knowledge or consent, deceased took all of plaintiff's furniture and furnishings, valued at $7,000, and appropriated same to her own use and never returned same, and that she never paid for it or for plaintiff's services; that deceased made the will herein mentioned; that on April 15, 1920, during the illness, and five days before the death, of Kingsley, deceased entered into an oral agreement with plaintiff, whereby, in consideration of said services performed by plaintiff, and in payment therefor, and for the furniture, she agreed to give plaintiff, by will, in the event of Kingsley's death, prior to her own, the share of her estate that she had previously left to him by will, and further agreed to so change her will; that plaintiff agreed to accept the bequest in full payment for said services and furniture; that Kingsley died April 20, 1920; that Helen Ballou failed to change her will as agreed or to otherwise pro-

vide for plaintiff; that plaintiff, relying upon said agreement, never made any attempt during the lifetime of deceased to collect for the services or furniture, believing at all times that deceased had changed her will as agreed, and, having no remedy at law, she seeks equity, praying that the administrator be required to specifically perform the alleged contract, or in lieu thereof that she be given judgment for $17,500.

The defendant administrator answered, denying the rendering of the services alleged, the taking of the furniture, and the making of the oral agreement to change the will, and then set up the following eight separate and special defenses: That the action is barred by section 6397, of the Compiled Laws of 1921, the three year statute of limitations; that the action is barred by sections 5211 and 5213, Compiled Laws of 1921, the one year limitation for contest of the terms of a will; that under section 5331, Compiled Laws of 1921, plaintiff is only entitled to judgment against the uninventoried assets of the estate; laches, because the action was filed more than two years after the estate could have been closed; election of remedies, because plaintiff filed claims for services rendered and for the value of furniture, which were determined against her; res adjudicata, because the matters and things relied upon in this action, were determined by the county court adversely to plaintiff; failure to show valuable or adequate consideration to support the alleged oral agreement, and that complaint does not state facts sufficient to constitute a cause of action.

Plaintiff's replication generally denies the allegations of the answer and alleges that the county court had no jurisdiction to determine the matter of agreement to change the will or convey by will; that the matters and things in the complaint set forth were never presented to the county court; further, that the services mentioned in the claims filed in the county court were for different periods of time than those mentioned in the complaint

herein. The finding of the trial court was generally against plaintiff, but the record does not disclose whether it was based upon the insufficiency of the evidence or upon the law raised by the special defenses.

The substance of the material part of the testimony of plaintiff's witnesses is as follows: Thomas R. Todd, plaintiff's brother, having knowledge as to the amount and quality of the furniture which plaintiff alleged was taken by deceased, testified as to its quality and that it was shipped from his mother's home in New York City to Colorado Springs; that he knew deceased from about 1910, and because of his close relationship with Kingsley, his brother-in-law, he had occasion frequently to converse with deceased on confidential and family matters, and that she spoke of plaintiff being so kind to her that she felt at liberty to call on plaintiff at any time for services; he recalled the occasion of Kingsley and plaintiff, his wife, coming to New York from Colorado Springs in 1919 and living in an apartment, Kingsley at the time being very sick and bedridden; that he visited them nearly every day and that the deceased was there most of the time; that on April 15, 1920, plaintiff's wedding anniversary, he visited the apartment and on that day, Mrs. Todd, Mrs. Binyon, Kingsley Ballou, the deceased and plaintiff were present; that Kingsley had a conversation with deceased and plaintiff concerning adjustment of their differences; that Kingsley told deceased that he wanted her to take care of plaintiff, as he seemed worried about her future and asked deceased if she would, in the event of his death, give plaintiff his share of the estate for the services plaintiff had rendered to deceased, and he also mentioned plaintiff's furniture that deceased had; that deceased agreed and said "Kingsley, I will do that"; that deceased then said to plaintiff, "You have been more than daughter to me, and for the services I owe you which you have rendered me, and the furniture you let me have, Kingsley has requested that I change my will in the event of his death and give you his share

of my estate and I have agreed to do that, is that satisfactory to you''; that plaintiff replied, ''yes, I will accept that if it is Kingsley's wish.'' Kingsley seemed to be happy and told him as plaintiff's future was provided for, he would die satisfied; that deceased told him afterwards that she was pleased that they had come to a settlement about the matter of services and furniture that had been in dispute.

Caroline Binyon, intimate friend of plaintiff, testified that she visited plaintiff's apartment frequently and often met deceased there where plaintiff entertained a great deal for her; that deceased had a number of breakdowns and was very feeble; that she said many times that plaintiff was kinder and more devoted to her than her own daughter and that she depended more on her; that deceased lived with plaintiff from about December, 1919, until the middle of April, 1920; that she (the witness) was present in plaintiff's apartment April 20, and heard the conversation between plaintiff, Kingsley and deceased; that Kingsley was worried about the care of plaintiff and spoke to deceased about her care after his death; that deceased said she would change her will and give plaintiff his share to provide for her; that she would do this in consideration of plaintiff's love and devotion and services and for the furniture which she had had for many years, in payment in return for that; that deceased asked plaintiff if that would be satisfactory and plaintiff replied that anything she would do would be all right; that the witness heard her say that she would change her will and give plaintiff Kingsley's share; that after that Kingsley said his mind was relieved about plaintiff.

The material part of the deposition of Lucille T. Valliant, plaintiff's sister, is to the effect that plaintiff worked for deceased in her home in Colorado Springs and elsewhere from the years 1907 to 1910; deponent stated that in 1908, she had a conversation with deceased in Colorado Springs, on which occasion deceased stated she was

indebted to plaintiff for her kindness in taking care of her and would see that she was reimbursed in her will; that she never heard of any disputed claims concerning furniture.

The substance of the material parts of the testimony of defendants' witnesses is substantially as follows: Leila F. Shields, a resident of Colorado Springs for forty years, was intimately acquainted with deceased; knew plaintiff and her husband Kingsley from the years 1907 to 1920; that deceased, plaintiff and Kingsley lived together; that they lived together two or three years in the residence of deceased; that she had business relations with deceased's family at Scranton, Pennsylvania, and she knew who was paying for the living expenses; that there was no friendly relation between plaintiff and deceased after Kingsley Ballou died and no services of any kind rendered to her knowledge; that deceased told her she gave the Colorado Springs property to her son before he died, and that she gave plaintiff and her husband money to enable them to come home from Paris in 1914.

Margaret Phillips, employed as a housekeeper by deceased from 1921 to 1930, testified that plaintiff never visited deceased's home from 1921 to 1930.

██ Enforcement of specific performance of oral contracts, such as is here alleged, is only upon proof of great certainty that the contract was made; and strict and satisfactory proof that there is sufficient consideration, and unless the plaintiff could not be otherwise compensated for irreparable damage, if any, sustained by the failure of deceased to perform. The evidence supporting plaintiff's claim in this case came from her brother, a sister, and a close friend of plaintiff, all of whom testified to oral statements of deceased that were against interest. Such testimony is regarded as the weakest of evidence. *Swedish Church v. Benson,* 77 Colo. 370, 237 Pac. 165. This testimony, hereinbefore related, indicates more of a request by Kingsley that his

mother share her estate with plaintiff, than a contract based upon past considerations, and it does not support the allegation that there was a prior agreement to compensate for the services alleged to have been rendered. The leading authority in this state on the question of enforcement of specific performance of a contract to make a will, is *Oles v. Wilson,* 57 Colo. 246, 141 Pac. 489, which is relied upon by plaintiff to support the bringing of this action. It is in harmony with the great weight of authority, and announces the rule that before an action of this kind can be maintained, there must be proof of damage that is irreparable, except by a performance of the contract. That is not the present case. Here the services alleged to have been rendered by plaintiff could have been measured in value, and in fact were by her so measured in her claim filed in the county court. The same is true as to the furniture. No attempt was made by plaintiff to prove that she was irreparably injured by a failure to carry out the terms of the alleged agreement.

The original statement, Exhibit 3, filed by plaintiff in the county court in the estate proceedings is as follows:

"To services performed by me for Mrs. H. L. Ballou in years 1907—1910—1930—Keeping house for Mrs. H. L. Ballou—hiring servants—marketing daily—taking over entire charge of household for three years when Mrs. H. L. Ballou was suffering from nervous prostration ......................................$3,000

"Acting as companion to Mrs. H. L. Ballou during this three years siege of nervous prostration—extra time—day and night...............................$2,000

"To extra cost of closing up my home, in order to take entire charge of Mrs. H. L. Ballou for three years ......................................$1,000."

█ The evidence in this case to support the alleged contract is not so clear and convincing that the court's findings otherwise should not be disturbed.

Under the facts, if it can be said that plaintiff had a right to recover, it was by either an action in law or a suit in equity. Here she pursued both. She could have but one recovery. If she recovered on her claims against the estate in the county court for the property and services rendered, then her right to specific performance, based upon the same consideration, ended. Being defeated by a disallowance of her claims in the county court, and failing to prosecute an appeal therefrom, she is barred from twice litigating the same facts by filing in the district court the present suit for specific performance. Plaintiff's entire course of procedure has been attended by inconsistency. When required to furnish a bill of particulars as to the claim in the county court she stated that: ''Shortly after claimant commenced to render services for deceased, deceased promised claimant that in consideration of such services she would provide for claimant in her will; deceased later on other occasions stated to claimant and others that in consideration of the many services performed for her by claimant that claimant was to receive one-half of the estate of deceased.''

In the present case she contends that there was a different service, and thereby a different consideration than the one on which the alleged contract herein sued upon, is based. It is apparent that the facts, necessary to prove the claim set out in the bill of particulars, are the same facts necessary to substantiate the contract here sought to be enforced. If the contract here alleged existed at all, and was different, it was in existence at the time of the preparation of the bill of particulars. For the purposes of establishing the claim as made in the county court, the contract as now alleged—and said to be different—could have been just as effectively relied upon. While plaintiff contends otherwise, the county court had plenary jurisdiction, if invoked, to determine the question. Such is the unchallenged practice in this state, which has full support in our constitutional and stat-

utory law. The subject matter relates to and affects the estate of a deceased person. It may be assumed that plaintiff presented her entire claim for all services in the county court, wherein she fixed the value of such services, and that she submitted to the jurisdiction of that court. Having done so, and having elected her remedy, she now is estopped from again litigating the same general subject matter by this a new suit, wherein, if successful, she would recover greater value than she at first solemnly declared. From the disallowance of the county court claims, plaintiff prosecuted an appeal to the district court, where, because of her own fault, the action was dismissed. Thus a clear case of former adjudication is presented and becomes an absolute bar to the proceeding now before us for review.

■ A further defense that precludes plaintiff in the present suit is the rule of law denying specific performance of contracts similar to the one here alleged, where the consideration is for labor and services, the value of which may be measured by and liquidated in money. Plaintiff, owing to her procedure in the county court, cannot now successfully here contend that this rule should not be fully applied. The rule is aptly stated in *Haubrich v. Haubrich,* 118 Minn. 394, 136 N. W. 1025, approved in *Oles v. Wilson,* 57 Colo. 246, 141 Pac. 489, and is as follows: "Specific performance of the contract will not be enforced, where the consideration is labor and services which may be estimated and their value liquidated in money; but where the consideration is that the promisee shall assume a peculiar and distinct relation to the promisor, and the services are of such a character that it is practically impossible to estimate their value by any money standard, specific performance will be decreed."

We find it unnecessary to discuss the other legal defenses presented, and for the reasons expressed, affirm the judgment of the lower court.

Judgment affirmed.

MR. JUSTICE BOUCK and MR. JUSTICE YOUNG not participating.