No. 15,240.

Estate of Murphy.
O'Byrne, Executor v. Lawson.
(134 P. [2d] 199)

Decided January 25, 1943. Rehearing denied February 15, 1943.

Mr. ALBERT T. FRANTZ, for plaintiff in error.

Mr. NEIL HORAN, for defendant in error.

*En Banc.*

Mr. JUSTICE JACKSON delivered the opinion of the court.

THIS case, involving the law of implied contracts, seems to be one of first impression in this court.

The action originated in the county court of the City and County of Denver where Mary Lawson filed a claim against the estate of Tim Murphy, deceased, for the sum of $895.00, the claim being supported by a bill of particulars which was itemized as follows: "Nursing, washing, general care of decedent, 179 days at $5.00 per day." The claim was contested by the executor of the estate. Upon due trial, the county court allowed the claim in the amount of $800.00. The executor then appealed to the district court of the City and County of Denver,

where, after argument and submission of the matter on briefs, judgment was rendered in favor of claimant for the full amount of her claim, $895.00. The executor brings the case here for review by writ of error, asking that the writ be made a supersedeas and operate accordingly. In compliance with his formal request, we have elected to determine the cause finally on the supersedeas application.

The evidence shows that decedent, Tim Murphy, had roomed and boarded at the home of claimant and her husband for a number of years at an agreed price of $40.00 per month for room, board and laundering his shirts and underwear; that in 1935 he left to reside elsewhere, subsequently became ill, and was taken to the Denver General Hospital for treatment; that after a month's stay in that institution he was ordered out and, at his own request, was again removed to the home of claimant. There is evidence that on his return from the hospital he was in bed for a period approximating two months; that claimant nursed and cared for him during that time, and for this extra work she was rewarded with a payment of $50.00. In 1937 he began to fail in health and claimant at times had to nurse and care for him. Toward the end of 1938, at which time he was over 80 years of age, he spent most of his time in bed, had lost control of his functions and for the last six months of his life, which ended on June 10, 1939, had to be cared for in much the same way as would an infant.

Mrs. Lawson's claim is based on the service she rendered to decedent during this latter period as a practical nurse, and is supported by the testimony of three persons—the attending physician, claimant's sister who lived next door, and by that of a nephew of claimant's sister's husband who helped at times to take care of decedent. The testimony of a witness for the executor tended to minimize the serious condition of decedent during the last six months of his life. There was evi-

dence that the decedent, after one of his vomiting spells, had stated that claimant would be paid for all the extra trouble she had been caused. The attending physician testified that he and claimant had tried to persuade decedent to go to a hospital, but that the latter refused to do so; that his condition was such in the last three or four months of his life that he required someone in attendance constantly. The decedent had no near relatives, the beneficiary of his estate being a cousin. Neither claimant nor claimant's husband were related to decedent.

We believe the evidence was ample to support the findings of the trial courts: that claimant had actually rendered the services upon which the claim was based and that the services were necessary in the proper care of decedent.

The executor resists the claim and argues that claimant is not entitled to recover at law, even assuming the foregoing facts to be true, on the ground that she was guilty of laches; that she had an express contract with decedent which had not been altered by any subsequent arrangement, and that any extra nursing the claimant did for decedent was merely gratuitous.

■ Counsel for the executor cites a number of Colorado cases, the great majority of which involve a situation where a claimant sued on an alleged express contract and had been unsuccessful in the trial court. In these cases we merely affirmed the findings of the respective trial courts, in conformity with the well established rule that where claimant seeks to recover from the estate of a decedent under an express contract clear and convincing proof is required. *Hathaway v. Bottenfield, Administratrix,* 73 Colo. 356, 215 Pac. 864; *Fellhauer v. Fellhauer,* 75 Colo. 358, 225 Pac. 844; *Allen v. Sackett, Administrator,* 76 Colo. 431, 231 Pac. 1110; *Piggott v. Brown, Administrator,* et al., 79 Colo. 11, 243 Pac. 626; *Lambrecht v. Bank,* 83 Colo. 387, 265 Pac. 901; *Goodrich v. Union Oil Co.,* 85 Colo. 218, 274 Pac. 935;

*McLean v. Jones,* 90 Colo. 213, 8 P. (2d) 261; *Ballou v. Bank,* 98 Colo. 101, 53 P. (2d) 592; *Parker v. Hilliard, Admr.,* 106 Colo. 187, 102 P. (2d) 734; *Larson v. Poudre Valley National Bank, Admr.,* 108 Colo. 58, 113 P. (2d) 686.

The foregoing cases, however, afford little assistance in the determination of our present problem because in the instant case the claim is founded on quantum meruit and the trial court allowed recovery, not on the basis of an express contract, but on the ground that there was an implied contract to pay for the services rendered.

We have stated (*Cody v. Raynaud,* 1 Colo. 272) that "a party may, for good cause and when the fault is not his own, abandon a special contract and recover the value of services upon an implied assumpsit. *Lantry v. Parks,* 8 Cow. 63; *McClure v. Secrist,* 5 Ind. 31; *Eldridge v. Rowe,* 2 Gilm. 91." In that case the express contract and the implied contract pertain to the same subject matter.

In the instant case the implied contract pertains to a subject matter quite distinct and different from that contained in the express contract. Although counsel for the executor lays stress on the fact that the express contract for room and board at $40.00 a month included the laundering of certain articles of clothing of decedent, we believe there is a sharp distinction between the weekly laundering of a boarder's clothing and the daily washing made necessary by a person in the helpless condition of decedent during the last few months of his life. As one witness testified "the line was always full of washing night and day." Certainly there is no evidence that the constant and continuous care and nursing was ever contemplated in the $40.00 a month contract for room and board.

We have in mind the general rule that "there can be no implied contract where there is an express contract between the parties in reference to the same subject matter." 13 C.J. 243, §9. We further note, however,

that this rule only applies where the express, and the asserted implied, contracts relate to the same subject matter and where the provisions of the express contract would supersede those of the other. *Rogers v. Becker-Brainard Milling Machine Co.*, 211 Mass. 559, 98 N.E. 592; *Wheeling and L. E. R. Co. v. Carpenter, et al.*, 218 Fed. 273. The rule does not apply where the implied agreement is based on the subsequent conduct of the parties not covered by the express contract. *Efron et al. v. Stees*, 113 Minn. 242, 129 N.W. 374.

■ The asserted defense that the services of claimant were rendered gratuitously might have more force had claimant been a close relative of decedent. In fact counsel, arguing for the gratuitous nature of the services, emphasizes the testimony of the attending physician that claimant "did all that a daughter would do for her father, and her services seemed to be rendered in the spirit of a daughter." We interpret this testimony merely as an evidence of the high quality of the services rendered and as a commendation for the devotion shown. Certainly it does not inject the principle of kinship into a case where no kinship exists. Even in those cases where a relationship does exist we have affirmed a judgment granting a granddaughter the right to recover against the estate of her grandfather for services rendered as housekeeper and nurse under the circumstances presented. *Mitchell v. Sheets*, 92 Colo. 439, 21 P. (2d) 714. In the case of *Tucker v. Tucker*, 21 Colo. App. 94, 121 Pac. 125, the judgment of the trial court in favor of a nephew against the estate of his uncle for services as nurse and constant attendant, under the particular circumstances of that case, was affirmed. In the instant case, where no kinship exists between claimant and decedent, we find no ground for holding that the services were rendered gratuitously merely because a high sense of devotion to duty has been shown; otherwise we would put a premium on sloth rather than elan in the performance of services.

The Tucker case, supra, has an additional bearing on the instant case. In the opinion Judge King uses the following language: "The question was submitted to a jury upon evidence sufficient to sustain its verdict, either upon the theory that the services having been performed at the request of the uncle, his promise to pay is implied in law, or, that he both requested the services and agreed to pay therefor." (The jury actually found for claimant under an express contract.) Later, in commenting on an instruction to which the executor had taken exception, Judge King stated: "This instruction was not as favorable to claimant as he was entitled to, for in the absence of an express promise to pay, the claimant was entitled to recover upon an implied promise." The concluding paragraphs of the opinion read:

"The opinions in *Martin v. Wright's Administrators,* 13 Wend. 460, and *Roberts v. Swift et al., Executors,* 1 Yeates 209, 212, are in point and conclusive as to the law applicable in this case. In the first of these cases, referring to the rule asserted by appellant in this case, the court said:

" 'The rule, I apprehend, was never intended to apply to cases where it was understood by both parties that compensation should be made; but merely to cases where services were rendered apparently gratuitously, under an expectation of a legacy.'

"In the other the court said: 'If the jury were satisfied from the whole of the evidence, that the services were done *at the request* of the testator, *no matter what the plaintiff's expectations were,* the action may well be supported. The exception to the general rule is well marked in 1 Espin. 87, 88.'

"And in this case, we may well adopt the language of the court in *Roberts v. Swift et al., supra,* 'It was a case of great hardship, and in such a case very slender testimony would satisfy ingenuous minds.' "

In *Kellum v. Browning's Adm'r.,* 231 Ky. 308, 21 S.W.

(2d) 459, the facts are very similar to those in the instant case and the opinion supports the position we have here announced. *Wallace v. Schaub,* 81 Md. 594, 32 Atl. 324, has circumstances even more similar to those in the case here under consideration and supports the position of the trial judges, not only in respect to the points we have already discussed but also relative to the method of establishing a fair and reasonable remuneration for the services rendered.

 Defendant in error filed her claim against the decedent's estate within the statutory period, and, in view of our discussion of the facts and the law, it is apparent that the doctrine of laches cannot properly be invoked as a defense in this case. We have found that the trial courts were justified in finding an implied contract existed between claimant and decedent relating to the services upon which the action was instituted, and that such services were not rendered gratuitously; that the remuneration for them was reasonable; and that the judgment here under review is supported by competent and sufficient evidence. It is accordingly affirmed.