In the Matter of the **ESTATE OF Geneva RODDY, Deceased.**

**Ruth KENNEY, Claimant–Appellant and Cross–Appellee,**

v.

**Helen PEITERSEN, Personal Representative–Appellee and Cross–Appellant.**

No. 88CA1392.

Colorado Court of Appeals, Div. IV.

Oct. 12, 1989.

Rehearing Denied Nov. 24, 1989.

Keene, Munsinger & Smith, Stephen M. Munsinger and Robert K. Gruber, Denver, for claimant-appellant and cross-appellee.

Goddard, Perry & Vogel, Gregory L. Goddard, Buffalo, Wyo., for personal representative-appellee and cross-appellant.

Opinion by Judge FISCHBACH.

Ruth Kenney, claimant against the estate of Geneva Roddy, her deceased aunt, appeals the judgment of the trial court insofar as it ordered only partial payment of her claim. Primarily, she asserts that the court erred in ruling that an adjudication on the merits of her claim was not barred by the personal representative's failure to disallow her claim within 60 days after the time for original presentment of claims had expired. Helen Peitersen, the personal representative and another niece of decedent, cross-appeals the trial court's judgment requiring partial payment. We affirm in part and reverse in part.

The decedent died without a spouse or children. In her will she named two of her three nieces, including the personal representative and excluding the claimant, as beneficiaries of her personal effects and household goods and furnishings, and named all three nieces, including the claimant, as beneficiaries of her residuary estate. Although in her will the decedent anticipated that she would direct the distribution of specific personal effects and household goods and furnishings through a subsequent memorandum, no such memorandum was executed. Included in her estate were a Ford Bronco and a Ford Thunderbird.

The personal representative published a timely notice to creditors on February 19,

1987, directing that all claims against the estate be presented before June 26, 1987. On April 20, 1987, the claimant submitted a timely notice of claim requesting $79,020 as payment for lost wages and services she had provided to the decedent before she died. The personal representative's attorney notified the claimant by phone on or about August 10, 1987, that her claim had been denied, and, on September 7, 1987, the claimant submitted to the court a petition to allow her claim. Only thereafter, on November 12, 1987, in her answer to claimant's petition, and on May 2, 1988, by means of a formal "Notice of Disallowance," did the personal representative deny the validity of the claim in writing.

Under § 15–12–806(1), C.R.S. (1987 Repl. Vol. 6B), if a personal representative fails to disallow a claim against an estate in writing within 60 days after the time for original presentment of claims has expired, the claim is deemed allowed. Here, after a hearing, the court applied this statute and ruled that the claim was allowed. It also ruled, however, that payment was subject to proof of the amount of the claim. Among the distributions pertinent to this appeal, the court ordered the estate to pay the claimant $20,000 on her claim as the reasonable value of her services, and awarded the two motor vehicles to the two nieces designated as beneficiaries of the decedent's "personal effects."

## I.

The claimant first appeals the trial court's ruling that her claim, which was automatically allowed when the personal representative failed to deny it in writing in a timely fashion, was subject to adjudication on the merits as to the amount. She argues that §§ 15–12–806 and 15–12–807, C.R.S. (1987 Repl.Vol. 6B) require that claims allowed by operation of law be paid in full without a hearing. The personal representative, on the other hand, asserts that claims deemed allowed may subsequently be disallowed by the personal representative and, upon timely petition by a claimant, be adjudicated on their merits. We agree with the personal representative.

Section 15–12–806(1), C.R.S. (1987 Repl. Vol. 6B) provides as follows:

"As to claims presented in the [prescribed] manner ... the personal representative may mail a notice to any claimant stating that the claim has been disallowed. If the personal representative fails to mail notice to a claimant of action on his claim within sixty days after the time for original presentation of the claim has expired, the claim shall be deemed to be allowed. After any claim has been allowed or disallowed, the personal representative may change the allowance or disallowance by notice to the claimant...."

The language of § 15–12–806 is susceptible to different interpretations as to whether the personal representative's authority to change a previous allowance to a disallowance is restricted to allowances made by the personal representative herself, or whether it also applies to allowances made by operation of law. Thus, we must construe it in light of the apparent legislative intent and purpose. *See Dodge v. Department of Social Services,* 657 P.2d 969 (Colo.App.1982).

The statute's history is an important tool in ascertaining legislative intent. *Haines v. Colorado State Personnel Board,* 39 Colo.App. 459, 566 P.2d 1088 (1977).

The current version of the statute was enacted in 1979. Colo.Sess.Laws 1979, ch. 152 at 650. At that time, both the order and content of § 15–12–806 were slightly altered. Language specifying that claims not disallowed within 60 days would be treated as allowed was modified and moved from the end of the paragraph to a position immediately preceding the sentence allowing the personal representative to change an allowance or disallowance. In addition, the latter sentence—which in the earlier version stated: "If after allowing or disallowing a claim, the personal representative changes *his decision* concerning the claim, he shall notify the claimant"—was amended as follows: "After any claim has been allowed or disallowed, the personal representative may change *the* allowance or dis-

allowance by notice to the claimant." (emphasis added)

The chairman of the Statutory Revision committee explained that the purpose of the revisions was:

> "to make it clear that the personal representative, by striking [the last sentence] and moving it up above, that if the P.R. inadvertently has failed to mail notice ... of allowance or disallowance, that it would be deemed allowed and he would still have the right to change his mind and disallow the claim. So that the failure to mail is simply the same as if, 'O.K., I allow your claim. Wait a minute, something came up. I hereby change my allowance.'"

Hearings on H.B. 1230 before the Senate Judiciary Committee, 52d General Assembly, 1st Session, January 31, 1979 (statement of R. Sterling Amber).

■ The legislative history, thus, resolves any ambiguity in the statutory language: A claim that has been deemed allowed by the personal representative's failure to disallow it within 60 days after the time for original presentation of the claim has expired may subsequently be disallowed by the personal representative.

Contrary to claimant's assertions, neither § 15–12–807 nor judicial precedent requires a different result.

Section 15–12–807 describes the manner in which the personal representative is to pay claims allowed against the estate. It also establishes that a claimant whose claim has been allowed but not paid as provided may, by petition to the court, "secure an order directing the personal representative to pay the claim to the extent that funds of the estate are available...." The provision, by its terms, applies only to claims that have not been disallowed by the date the personal representative begins payment of claims. Thus, even if it requires full payment of allowed claims if funds are available, a question we do not decide, the provision cannot require payment of claims that were once deemed allowed but have subsequently been disallowed by the personal representative. The remedy for a claimant whose claim has been denied by the personal representative is to file a petition for allowance pursuant to § 15–12–806(2), C.R.S. (1987 Repl.Vol. 6B).

*In re Estate of Hamilton,* 633 P.2d 1100 (Colo.App.1981) is likewise inapposite. There, we held that the trial court was not required to reopen an estate that had been closed in order to litigate the merits of a claim that had been deemed allowed by operation of law. The issue here, on the other hand, is whether the personal representative may, while the estate is still open, disallow a claim previously deemed allowed. In addition, insofar as we addressed § 15–12–806 in *Hamilton,* we were applying the pre–1979 version of the statute.

Here, the facts are undisputed. Within 60 days after the date for original presentation of claims had expired, the claimant was aware that her claim was being denied. Nonetheless, because she had received no written notice of disallowance by that time, the claim was deemed allowed pursuant to § 15–12–806. Some time thereafter, but while the estate was still open, the personal representative gave the claimant formal written notice of disallowance. By this notice, the personal representative changed the deemed allowance to a disallowance, which, under § 15–12–806(2), the claimant was entitled to contest.

Although it is not clear from the record whether the trial court treated claimant's petition for allowance of claim as a petition for allowance under § 15–12–806(2) or a petition for payment under § 15–12–807(1), its ruling had the effect of an adjudication on the merits under the former statute. As such, it was proper, and the trial court did not err in refusing to accept the entire claim without a hearing.

## II.

The personal representative argues on cross-appeal that, because the claimant submitted insufficient evidence to establish either the existence of an implied contract to pay or the value of the services, the trial

court erred in awarding the claimant $20,-000. We disagree.

In the absence of an express contract,. an agreement may be implied, and a person who has rendered services to another may recover for the value of those services in quantum meruit. *In re Estate of Murphy*, 110 Colo. 304, 134 P.2d 199 (1943). To recover under a theory of quantum meruit, the plaintiff must prove "(1) that [she] conferred a benefit on the defendant, (2) that the benefit was 'appreciated' by the defendant, and (3) that the benefit was accepted under such circumstances that it would be inequitable for the defendant to retain it without payment of its reasonable value." *Frank M. Hall & Co. v. Southwest Properties Venture*, 747 P.2d 688 (Colo.App.1987).

Here, although the Dead Man's Statute, § 13–90–102, C.R.S. (1987 Repl. Vol. 6A), precluded any testimony by the claimant concerning her care of the decedent, a friend and neighbor of the decedent testified that the claimant had provided live-in care for the ailing decedent for several months in 1985 and for at least five months in 1986. The neighbor also testified that the claimant consulted with the decedent's doctor, shopped for special foods for her, cooked for her, cleaned her house, did "all those types of things," and took her out for walks in an appropriate location to prepare her for surgery. To hire a licensed practical nurse to provide this kind of service was described as costing "twelve to fifteen an hour."

In addition, the neighbor testified that both the decedent and the decedent's late husband had told her, in the context of calling the claimant from Fort Collins and, later, from California to help them during various illnesses, that the claimant would be getting their estate when they died.

This evidence supports the trial court's finding that, "had [claimant] not rendered those services, the decedent would have had to have someone render those services and that at a minimum she would have paid $2,000 a month during those ten months that she was so ill and needed attention," and its implicit finding that the services were not gratuitous. Thus, the requirements of the quantum meruit recovery were met, and the award was not error.

### III.

The claimant next challenges the trial court's ruling that the Ford Bronco and Ford Thunderbird pass only to decedent's other two nieces as "personal effects" rather than as part of the residuary estate. In so ruling, the trial court stated: "I think that logically the way the [w]ill is read that anyone who reads it would be surprised to know that the Ford Bronco and Ford Thunderbird passed as personal effects," but it nevertheless concluded that it was required to so find according to *In re Estate of Schmidt*, 638 P.2d 809 (Colo.App.1981).

Claimant contends that the plain and accepted meaning of "personal effects" does not include automobiles and that *In re Estate of Schmidt* is inapposite. We agree.

Unless the language of a will indicates a clear intent to the contrary, its terms must be construed in accordance with their plain meaning. *Platt v. Brannan*, 34 Colo. 125, 81 P. 755 (1905). Phrases used in a will to which the law has affixed a definite meaning are presumed to have been used in that sense, unless it clearly appears they were not so intended. *Daniels & Fisher Realty Co. v. Kenyon*, 261 F. 407 (D.Colo.1919).

The term "personal effects" has been consistently defined as referring to "tangible property worn or carried about the person or ... having some intimate relation to the person." *Black's Law Dictionary* 1029 (5th ed. 1979); *see* W. Huff, *Colorado Estate Planning* § 2.8 (3rd ed. 1985); Annot., 30 A.L.R.3rd 797 at 810–811 (1970).

*In re Estate of Schmidt, supra,* does not modify this meaning. In *Schmidt*, the decedent bequeathed "certain items of tangible personal property" in accordance with a memorandum or, if such memorandum did not exist, to his friend, Emogene Blake. Relying on this clause, Blake sought to establish herself as legatee of the decedent's bank accounts, credit union accounts, and insurance proceeds. We affirmed the trial court's declaratory judg-

ment against Blake, holding that, under the will at issue, "personal property" could not refer to this kind of asset, but only to property allowed to pass by memorandum under § 15–11–513, C.R.S. (1987 Repl.Vol. 6B), as then in effect. The statute provided that "money, evidences of indebtedness, documents of title, and securities" could not pass by memorandum.

Here, the disputed assets are two cars, and the will refers to "personal effects," not "personal property." While a car *may* pass as "personal property" under § 15–11–513, it is not required to so pass. By bequeathing "personal effects" to the claimant's two sisters, the decedent limited the devise to those items "worn or carried about the person or having some intimate relation to the person." Because the Ford Bronco and the Ford Thunderbird do not meet this definition, the trial court erred in awarding them to the two sisters as "personal effects," rather than to all three sisters as part of the residuary estate.

The judgment is reversed insofar as it awarded the two motor vehicles as part of the decedent's personal effects, and the cause is remanded with directions that those vehicles be included in the residuary estate. The remainder of the judgment is affirmed.

TURSI and DUBOFSKY, JJ., concur.