[No. 5732.]

## BROWN v. ESTATE OF HOLLOWAY.

1. **Estoppel by Conduct**—One who accepts, acts upon, and has the benefit of, a contract entered into with another as agent for a third person, is estopped to question the authority assumed by the agent. The contract merges all prior oral negotiations with the principal relating to the same subject-matter.—(466)

2. **Evidence—Parol to Vary Writing**—An oral statement, as to the effect to be accorded to a written agreement, made by one of the parties thereto at the time of its execution, is without effect.—(467)

*Appeal from Denver District Court*—Hon. F. T. JOHNSON, Judge.

Messrs. MCBETH & MAY, for appellant.

Mr. W. W. DALE, for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

The verified claim of the appellant against the estate of Joseph Holloway, deceased, was filed in the county court of the city and county of Denver, as follows:

"ESTATE OF JOSEPH HOLLOWAY, DECEASED.

To E. W. BROWN, DR.

"To damages by failure to take and pay for 245 horses delivered by E. W. Brown for the deceased, in Denver during the life of deceased, in accordance with agreement between said Brown and deceased, by which such horses were to be so delivered and paid for at the agreed price of $50.00 per head..............$12,500.00

"Less amount subsequently received and credited in reduction of damages sustained .............................. 2,000.00

"Total......................$10,500.00"

This claim was disallowed by the county court, and an appeal was taken to the district court, where, upon trial to a jury a motion for nonsuit was granted, and judgment entered in favor of the administratrix of said estate for her costs (amount unstated), from which this appeal is taken.

This court has jurisdiction to review the judgment by writ of error, but not on appeal. In such circumstances our statute provides that the appeal shall be dismissed and the cause redocketed on error. Orders so providing are therefore entered.—*D. & R. G. R. R. Co. v. Peterson,* 30 Colo. 77; *Edmonston et al. v. Ascough,* 43 Colo. 55.

The contention of the appellant is, that after selling a portion of one car of horses to Mr. Holloway, he requested him to bring up two more carloads from New Mexico, and he would make a contract with him for the purchase of more horses; that, thereupon, he shipped two more carloads, and Mr. Holloway, after looking them over, made an oral agreement with the appellant to accept anywhere up to five hundred

head that would correspond, or compare, on an average, with the two carloads then shipped, and agreed to pay $50.00 per head; that under this arrangement the appellant, at Holloway's request, turned over to Clark (who had corrals in Denver) the two carloads, and, under the contract, continued to ship others which averaged as good, a portion of which were accepted; that Mr. Holloway died in the east on or about March 17, 1902; that at the time of his death there were two hundred forty-five of Brown's horses, which had been shipped under this contract, awaiting acceptance by Holloway in Clark's yards at Denver; that his representatives refused to take or pay for the horses then on hand, and they were left on the hands of Brown to dispose of as best he could, which he did, but with the result that he received therefor $10,500.00 less than the original contract price.

It is questionable whether the evidence sustains appellant's contention as to the substance of the original contract. It shows that Mr. Holloway, during his lifetime, was engaged in buying a large number of horses, by him turned over to the British government, and that all such had to bear the scrutiny of inspection and be subject to certain tests. The district judge stated, "it was his opinion that a part of the original agreement was that the horses should meet the requirements of the officials for the British government, and be subject to such approval."

It has been held by this court that the evidence to support a claim against an estate should be clear and convincing as to its existence, as well as the amount of the claim.—*Clarke v. Estate of Roberts,* 38 Colo. 316. But this contention, as well as the right of the trial judge to make findings of fact upon granting a nonsuit in an action at law being tried before a jury, need not be passed upon here.

The evidence is undisputed, that before Mr. Holloway's death (when he was sick in the east), the appellant went to his home here in Denver and advised his daughter that a large number of the horses were here ready for acceptance; that she stated to him she did not know what to do, she had received a telegram that her father was sick, not expected to live, and he had better come back again and see her brother, Sidney; that he went back again to the home that day, or the next, saw Sidney (a young man), and they still did not know exactly how the business would be handled; that the result of this last conference was that an agreement in writing was signed by the appellant, and Holloway's name attached thereto by his daughter, Miss Marian, which agreement reads as follows:

"Denver, Colo., March 17, 1902.

"This article of agreement made by and between J. Holloway, his heirs executors or assigns party of the first part and E. W. Brown and G. P. Anderson party of the second part, to-wit. That said party of the second part agrees to send all of his horses 260 head in number to the Westfield farm to be fed hay and said horses to have the use of a correll to remain in untill the day of inspection when all of those that are deemed fit to show are to be shown. For all of those horses that pass in the B Class said party of the second part shall receive the sum of Sixty Dollars ($60.) and for all those horses that pass in C class said party of the second part is to receive the sum of Fifty ($50.) For all feed given to said horses the said party of the second part agrees to pay to said party of the first part the actual first cost of same with cost of delivering same added.

"Said party of the second part further agrees that all of said horses shall be holding as security to

said party of the first part for all feed or expense on said horses and men. Said party of the second part further agrees that said horses shall be held by said party of the first part to secure any money advanced to the said party of the second part by said party of the first part. Said party of the second part declairs that all of said horses belong to them clear of incumbrance whatsoever.

"(Signed)        J. HOLLOWAY
"By MARIAN HOLLOWAY
"E. W. BROWN
"G. P. ANDERSON."

Previous to this time Miss Holloway had written checks and made payments for her father during his lifetime, in this business of purchasing horses for the English government. The evidence is not clear whether this contract was made before or after the father's death, but under it the horses then on hands were taken to the farm therein named; a part were shown to the officials of the English government, and portions of those shown were accepted and paid for at the prices named in this written contract, the money accepted by Mr. Brown, and the remainder sold to other parties, but at a less price than $50.00 per head.

The testimony of the failure or refusal of Mr. Holloway, his heirs, executors, administrators or assigns, to comply with the conditions of the first contract is very unsatisfactory. It will be noted that Mr. Brown only made two trips to the Holloway home, both the same day, or the second the succeeding day. It does not show the two children, Marian and Sidney, were the only heirs of the deceased; and if Mr. Holloway was then dead, no administrator had been appointed, nor any reasonable time elapsed for the appointment of one; but there is no positive evi-

(30)

dence that Mr. Holloway was dead at the time this contract was made. The better inference (which is all the evidence would warrant upon the subject) is that it was made when he was yet alive, in anticipation of his death, and at the solicitation of Mr. Brown, who acted thereunder, and accepted its benefits. Had the result turned out one way it would have been better for him than the original oral agreement as claimed by him. The contract purported to be the contract of Mr. Holloway, his name was signed thereto by his daughter, who had theretofore written a number of his checks in payment for horses thus purchased, and who transacted portions of his other business. If Mr. Holloway was then alive, there was no evidence introduced showing that the daughter had no right to make the contract as she did; the appellant accepted it, acted under it, and has had the benefit of it. We think that, by its execution, all oral contracts with Holloway concerning the sale and purchase of these same horses were merged into this written agreement, and that the plaintiff thereby waived any claim for damages by virtue of any alleged breach of said former oral agreement; that it was properly admitted in evidence, and, under such circumstances, the appellant is estopped from denying its validity.—*Arthur v. Israel,* 15 Colo. 147; *Jones v. Langhorne,* 19 Colo. 206; *Farrer v. Caster,* 17 Col. App. 41; *Kerr v. Burns et al.,* 42 Colo. 285; Herman on Estoppel and Res Judicata, vol. 2, sec. 1039; Cyclopedia of Law and Procedure, vol. 16, pp. 789 and 791 (and cases there cited).

The contention urged so earnestly by counsel for appellant that the sale under the oral agreement was an uncompleted sale, and when acceptance was refused, it was the appellant's duty to dispose of the horses to the best advantage, that upon account thereof he had a right to provide for their disposition

through the heirs of the deceased, and for that reason the arrangement with them was a separate matter, and was in no way a waiver of his claim against the estate, is not sustained by the record.   The written contract purports to be a contract with Mr. Holloway himself, its language simply shows a modification of the terms and conditions of the sale by which the horses were to be accepted, it provides the appellant was to receive a greater price for certain kinds of horses received by the British government than he would have under the oral agreement, to wit, all or a part of Mr. Holloway's profit.   We think this evidenced an intent upon his part to merge the oral agreement into this contract and accept its provisions in lieu thereof.   His alleged statements to the contrary, wherein he told the son and daughter at the time of its execution that the agreement would be satisfactory, conditional that he thus secured his full purchase price for the horses, per the terms of the former oral agreement, were at best statements attempting to vary the terms of a written contract, which statements were made at the time of its execution and could have no effect thereon.

The judgment will be affirmed.     *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.

Opinion filed November 1, A. D. 1909; rehearing denied April 11, A. D. 1910.