## No. 10,357.

### HATHAWAY *v.* BOTTENFIELD, ADMINISTRATRIX.

Decided May 7, 1923. Rehearing denied June 4, 1923.

Proceeding involving the allowance of a claim against a decedent's estate. Claim disallowed.

*Affirmed.*

1. PROBATE LAW—*Claims—Proof.* Claims against an estate should be established by very satisfactory evidence, and where proof of a promise to pay a claim, barred by the statute of limitations, consists of parol evidence of admissions or declarations of a decedent, the rule is very strictly applied.

2.  WORDS AND PHRASES—"*Settlement.*"  The meaning of the word "settlement" discussed, and held not to be an absolute and unconditional promise to pay, as used in the case under consideration.

3.  STATUTE OF LIMITATIONS—*New Promise.*  The law regards a creditor culpable for not enforcing his demand within the statutory period, and the bar of the statute will not be removed except upon clear proof of a new promise and the performance or fulfilment of the conditions, if any, attached thereto.

*Error to the District Court of Gunnison County, Hon. Straud M. Logan, Judge.*

Mr. J. M. McDOUGAL, Mr. EDWARD D. UPHAM, for plain-in error.

Mr. E. M. NOURSE, Messrs. CRUMP & RILEY, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

MRS. HATTIE HATHAWAY presented, for allowance, in the county court of Gunnison county, a claim against the estate of Elmer E. Bottenfield and his, widow as administratrix of his estate.  The judge of the county court, having been the attorney of claimant, and thus disqualified, certified the claim to the district court of the county, as provided by statute, for determination there.  Upon a hearing, without a jury, the court found the issues against the plaintiff and for the estate, and rendered a judgment of disallowance, which is the subject of the present review by the claimant.

The material evidence upon one of the principal questions for decision, is a deposition, and upon other issues there is oral testimony.  Whether the finding upon this evidence, being in part a deposition, and in part parol testimony, does, or does not, require us to make our own findings of fact, irrespective of the findings made by the trial court, is not important, for our decision affirming the judgment is reached upon a careful consideration of all

the evidence in the case and upon our own conclusion as to the insufficiency of the claimant's showing.

The claim as filed consists of three items: two promissory notes given by the husband of the administratrix to the husband of the claimant during their lifetime, and an open account which was for cash advanced to Bottenfield by Mr. Hathaway, and not evidenced by any writing. These notes were given, and the account was contracted, in 1892, became due early in 1893, and were barred by our statute of limitations in 1899. No attempt to collect these debts was made for about twenty-eight years after the debts were created, and for about twenty-one years after they became due, and for about fifteen years after they were barred, and not until Mrs. Hathaway, as the heir or legatee of her husband, filed the claim in the county court of Gunnison county. She seeks to toll the statute by a promise made to her, after she had succeeded to the ownership, by Mr. Bottenfield to make immediate settlement. Bottenfield lived for three or four years after the alleged promise of settlement, and no attempt was made to collect during his lifetime and not until after his death, as above stated. One Carruthers, whose deposition was taken by the claimant, testifies that Mrs. Hathaway requested his assistance in effecting a settlement of these claims with Bottenfield during his lifetime. The latter came to Carruthers' office in Denver, in response to a letter which Carruthers had written to a mutual friend at Crested Butte, in which the mutual friend was asked for his assistance. There is no showing as to whether Bottenfield was ever requested by the Crested Butte friend to pay. Carruthers did not have the notes and accounts in his possession when Bottenfield called and introduced the subject, and suggested to Bottenfield that they visit Mrs. Hathaway, then in Denver, which they did. Carruthers testifies that, at his office, Bottenfield said that the notes were undoubtedly outlawed, to which statement Carruthers assented. When they reached Mrs. Hathaway's home the notes and accounts were exhibited to Bottenfield,

and he examined them with care. Bottenfield repeated again that the notes were outlawed and that we would be unable to collect, and we told him that we understood that that was so. Bottenfield then said he did not have any money at the time, that he had not disposed of his hay crop, and that he would go back to his farm near Crested Butte and dispose of his hay and immediately make settlement of the notes and accounts. This was the substance of Carruthers' examination in chief. Upon cross-examination it further appeared that after Bottenfield had said that the notes were outlawed and that they could not be collected, Mrs. Hathaway made a demand upon him and he had replied about settlement when he sold his hay. Carruthers says that Bottenfield did not say, and neither he nor Mrs. Hathaway asked him, what kind of a settlement he would make or had in view, and that neither he nor Mrs. Hathaway knew what kind of a settlement Bottenfield had in mind. An attempt was made by the claimant to show the happening of the condition upon which the settlement was predicated, a sale by Bottenfield of his hay. Two witnesses were called to this point and both of them testified that they did not know whether the crop of hay which Bottenfield that year produced and cut from his farm, was or was not sold. The extent to which they were willing to go was, that some of the hay that he cut had been fed to his stock and some was baled and taken away, but whether it was sold or given away, or what disposition Bottenfield made of it they did not know.

In 18 Cyc. 532 and 24 C. J. 404, the general rule is said to be that claims against an estate should be established by very satisfactory evidence. In some states the uncontradicted testimony of a single witness is not enough, and in some it may be sufficient, but should be carefully scrutinized to prevent, as far as possible, the allowance of unjust demands. Where the proof of a promise to pay a claim, barred by the statute of limitations, consists of parol evidence of admissions or declarations of a decedent, the rule is very strictly applied. Possibly the leading case in

this country is *Bell v. Morrison,* 1 Pet. 351, 7 L. Ed. 174. That court, as well as this court, has spoken emphatically as to the care to be exercised in such cases and for the necessity of enforcing the strict rule.   The opening brief of the claimant is largely devoted to the proposition that "settlement", when used in connection with an ascertained debt or liability, means "payment."   This was decided by this court in *Lomax v. Colorado National Bank,* 46 Colo. 229, 236, 104 Pac. 85.   In the Lomax case the promise of "settlement" was in no wise qualified or limited by other statements whose tendency might be, or was, that settlement was used in its ordinary sense of an adjustment or ascertainment of the amount of the indebtedness.

It will be observed from the foregoing statement that at the time the debtor Bottenfield is said to have promised to make settlement as soon as he could dispose of his hay, in that very connection, both to Carruthers and to his principal, Mrs. Hathaway, he further stated that the claims were outlawed and could not be collected.   Carruthers testified that neither he nor Mrs. Hathaway knew what kind of a settlement it was that the debtor intended to make. It may be that Carruthers did not know what his principal knew, but he is supposed to know what he himself knew or thought.   It might well be that Bottenfield employed the word "settlement" in the sense of fixing the exact amount of the debt and what portion of it, by way of settlement or compromise, he would pay.   But for the purpose of this case we shall assume, but not decide, that Bottenfield, in legal effect, promised to pay an ascertained debt, which, if made, tolled the statute.   This promise, however, according to Carruthers' statement was not an absolute and unconditional promise to pay.   It was, if a promise to pay at all, a promise to pay after he disposed of his hay.   There is just as much reason for saying that "disposition" of the hay means selling it for money, as there is for saying that the promise to "settle" was a promise to pay; for, if Bottenfield promised to pay when he disposed of his hay, this necessarily implied that pay-

ment would be made out of the proceeds of the disposition of the hay for money, which would be a sale, pledge or mortgage. One of the late cases (Montgomery's Estate, 259 Pa. 412, 103 Atl. 223) goes to the extent of saying that a mere general statement by the debtor that he will settle is insufficient to remove the bar of the statute of limitations.

The record does not disclose upon what particular ground the court disallowed this claim. If there is any evidence in the record upon which it could legally be based, the judgment of disallowance should not be set aside. The testimony in support of the statement that the hay was sold is entirely insufficient; at least, the trial court was justified in so finding and we must presume, upon this review, that it did find that there was a failure to prove that the debtor had ever at any time sold this hay. In *Richardson v. Bricker,* 7 Colo. 58, 1 Pac. 433, 49 Am. Rep. 344, in a well considered opinion by Justice Helm, it was said that where the promise to pay by a debtor when "he got the money, or sold his coal land, or became able, or turned in some stock", was not an unconditional promise to pay at a specified time, but if the promise amounted to anything, it was a new promise to pay when able, or provided a sale of coal land was effected, or when the promisor turned in some stock. As there was no sufficient proof that a sale was made, the court held that the promise did not toll the statute. In the same case, page 60, it was said, what is peculiarly applicable here:

"The law regards the creditor as culpable for not enforcing his demand within the statutory period, and the leading authorities are now decidedly against removing the bar of the statute and relieving him from the result of such negligence, except upon clear proof of a new promise and the performance or fulfillment of the conditions, if any, attached thereto."

To the same effect are *Clarke v. Estate of Roberts,* 38 Colo. 316, 87 Pac. 1077, and authorities therein cited; *De Monco v. Means,* 47 Colo. 457, 107 Pac. 1107; *Brown*

*v. Holloway,* 47 Colo. 461, 108 Pac. 25; *Reed v. Interstate Oil Co.,* 41 Colo. 463, 92 Pac. 911; *Toothaker v. City of Boulder,* 13 Colo. 219, 226, 227, 22 Pac. 468.

In view of the doctrine of this court, and of courts of this country generally, that stale claims are regarded with suspicion, that strict proof must be made in support of all claims presented for allowance against the estates of deceased persons, particularly where the proof consists of alleged oral declarations of the decedent, and that a promise to toll the statutes of limitations must be unequivocal and unconditional, or, if conditional, that the condition affixed must be complied with, we are unable to say that the proof upon this trial brought the case within such requirements. The district court did not have superior facilities for determining the credibility of Carruthers, or the sufficiency of his testimony taken by deposition, but it saw and heard the witnesses who testified at the trial on the issue as to the happening of the condition upon which the promise was made, which the claimant attempted to establish, and its facilities for determining their veracity and the weight of their testimony, were superior to ours derived from the transcript. Aside from this, the claimant's own witnesses, upon cross-examination, admitted that they had no knowledge as to what disposition the debtor made of his hay.

For all these reasons we can not interfere with the judgment below, and it is accordingly affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.