No. 14,663.

Estate of Knapp.

PARKER *v.* HILLIARD, ADMINISTRATOR.

(102 P. [2d] 734)

Decided May 6, 1940.

Mr. MILNOR E. GLEAVES, for plaintiff in error.

Mr. BENJAMIN E. SWEET, Mr. OVAL A. PHIPPS, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS action involves a claim against the estate of Lee Knapp, deceased, which was duly presented during the administration proceedings in the county court, allowed in part, and an appeal taken from the ruling to the district court by the administrator. At the conclusion of the introduction of claimant's evidence in a jury trial on the appeal, the court, on motion of the administrator, entered a judgment of nonsuit, to review which claimant regularly brings the matter here for our consideration.

Altered to conform to our appellation of the parties the amended statement of claims, so far as pertinent, alleges: "That on or about the ........ day of November, 1937, claimant and the said Lee Knapp mutually entered into an oral arrangement and agreement wherein and whereby it was understood and agreed between them in words and to the effect that the said Lee Knapp promised and agreed to support and maintain claimant for the remainder of his natural life, and arrange and see to it that he wanted for nothing for his comfort and living *and to that end get all that he, the said Knapp, left when he died,* in consideration for which promise claimant undertook and agreed from thenceforth to be

a companion to the said Knapp for the remainder of his (Knapp's) natural life and assist him in his personal and property affairs; * * * that * * * claimant always has fully, faithfully and duly performed all the terms and conditions thereof on his part. * * *; that a fair and reasonable sum for the support, * * * and maintenance of claimant from and after the time of the decease of Lee Knapp during and through the period of the natural life and the life expectancy of claimant, and for his reasonable wants and pleasure for the remainder of his life, would be and is the sum and amount of Twenty-Five Thousand ($25,000.00) Dollars. * * * that Lee Knapp died intestate leaving no heirs-at-law."

In the district court, previous to the introduction of evidence and again at the conclusion of his case, claimant sought permission to strike the words above italicized upon the ground that he could not produce evidence to support the allegation. The administrator objected upon the premise that as pleaded claimant's asserted right to the entire estate rested on an oral contract, void under the statute of frauds, and that the motion was an attempt to evade the operation of such statute; that in effect it sought to change the original claim by amendment after the expiration of the period within which a claim might be filed, and that the words sought to be stricken were an integral part of the alleged agreement and not severable from it. The court denied the motion and claimant assigns error to the ruling. In view of our disposition of the proceeding as hereinafter will appear, it is not necessary that we discuss or consider this point nor the applicability of the statute of frauds to this or other phases of the case.

From the evidence it appears that for some years prior to his decease, Knapp had employed the claimant at a wage not disclosed by the record, as caretaker for a dwelling and plot on West Forty-fourth avenue beyond Wheatridge, west of Denver, where, after the death of Knapp's wife, the two men lived. There is no doubt that

Knapp and the claimant were close friends and that the latter rendered loyal and conscientious service to his employer Knapp during his lifetime. Soon after the death of Knapp claimant filed a claim against the estate for $50 for services rendered the deceased, which was paid. Subsequent to the filing of the claim under consideration, claimant tendered back to the estate the sum so received by him, which the administrator refused to accept. The evidence upon which reliance is placed to establish the contract and claim consisted of oral admissions and statements alleged to have been made by Knapp to several third parties who testified as witnesses for claimant. One witness—said in claimant's brief to most strongly support his case—declared that in the fall of 1937, as well as upon other occasions subsequently, Knapp told witness: "I have agreed with Mr. Parker that if he will stay with me, I will take care of him for the rest of his life and he will never want for anything." A second witness testified to admissions by the deceased in substantially the same words. A third witness testified: "Well, when he told me about his property on West Forty-fourth, he told me Mr. Parker was taking care of it, he was perfectly satisfied, and that he was paying him a nominal fee and he expected to see that Mr. Parker would be taken care of." The next witness said Knapp stated: "He [Knapp] never told me what he was giving him [Parker], or anything, and I didn't ask him, but he says, 'I have nobody to look after me,' and, he says, 'I don't intend to leave anything to the State nor the City—they did nothing for me—I am going to look after my friends,' and, he says, 'Mr. Parker in particular'." That on another occasion Knapp said: "He would see to it that he [Parker] would never have to want for anything as long as he lived." The witness who followed stated that Knapp told him "that he had made provision to take care of Mr. Parker during his lifetime —that is, Parker's lifetime," and that "Parker was to perform what little services there was out there and

act as companion." Claimant's last witness on this phase of the case said Knapp told him, "That Mr. Parker would never have to worry, that he would certainly see that he was taken care of the rest of Mr. Parker's life and that they had an understanding to that effect." In addition to the foregoing evidence claimant, through the agency of a family bible, established that he was born on February 26, 1870, and introduced the Colorado statute containing the mortality tables to establish his life expectancy.

The testimony so offered in support of the claim, consisting entirely of a recital of alleged oral statements of deceased against his interest, has often been denominated by this court as the weakest of evidence. *Swedish Church v. Benson,* 77 Colo. 370, 237 Pac. 165; *McLean v. Jones,* 90 Colo. 213, 8 P. (2d) 261; *Ballou v. Bank,* 98 Colo. 101, 53 P. (2d) 592; *De Monco v. Means,* 47 Colo. 457, 107 Pac. 1107. In the latter case concerning this type of testimony the opinion states: "Such evidence has frequently been characterized by courts as weak and unsatisfactory, and in some cases it is held that such admissions are insufficient proof to establish a claim against an estate; and while this last statement has not as yet received the entire approval of this court, the first seems to have been accepted as well as the rule that the evidence to support a claim against an estate should be clear and convincing as to its existence as well as the amount of the claim. *Clarke v. The Estate of David Roberts, deceased,* 38 Colo. 316." See, also, *Hathaway v. Bottenfield,* 73 Colo. 356, 215 Pac. 864; and *Brown v. Halloway,* 47 Colo. 461, 108 Pac. 25. In this connection it is further to be observed that no witness testified that the deceased expressly agreed to provide any certain or definite amount, monthly, annually or otherwise, for the support of claimant; neither was there an iota of evidence offered or introduced tending to show what sum would be a reasonable allowance for his support and maintenance; nor was there any evidence

whatsoever from which the jury might have determined what were the claimant's needs, if any, or that he does, or ever will, "want for anything." Further, it may be questioned whether past services when rendered under circumstances which create no legal liability, constitute consideration for a subsequent promise. 1 Page on the Law of Contracts, §627, et seq; *In Re Estate of Fisher,* 128 Ore. 415, 274 Pac. 1098. In the light of the legal requirements necessary to establish such claim, it would appear that the evidence adduced to support the alleged contract and claim was not so clear and convincing as to warrant us in disturbing the judgment of nonsuit entered by the trial court.

As a further ground for reversal it is asserted that the court erred in refusing to permit the claimant Parker to be sworn and take the stand as a witness. As bearing upon this assignment the record discloses the following:

"Mr. Gleaves [attorney for claimant]: Mr. Parker, will you be sworn?

(William H. Parker, the Claimant, comes forward.)

"Mr. Sweet [attorney for administrator]: If your Honor, please, I object to the witness William H. Parker, who is also the Claimant, being sworn or testifying, for the reason that he is incompetent to testify, under the statute.

"Mr. Gleaves: If your Honor please, I would be derelict if I did not ask my own client to testify in his case. I recognize—

"Mr. Sweet: Just a moment. I think the jury should be excused.

"Mr. Gleaves: Why not talk? There is nothing secret about it.

"The Court: The objection will be sustained.

"Mr. Gleaves: Exception."

From statements appearing in the briefs it would appear that counsel for the administrator, relying upon the case of *Milsap v. Stone,* 2 Colo. 137, believed that unless objection to the competency of the claimant

as a witness in his own behalf was made before the oath was administered, the point would be waived. In sustaining the objection the trial court apparently held the same view. The Milsap decision, as to this point, was expressly overruled in *Norris v. Bradshaw*, 92 Colo. 34, 18 P. (2d) 467, and apprehension in this respect thus was unwarranted. In the light of the exceptions contained in the statute, section 2, chapter 177, '35 C.S.A., it is obvious that the claimant, while incompetent to testify as to some matters might have been competent to testify as to others, as, for example, facts occurring after the death of Knapp (subdivision 1, section 2, supra). Where the incompetency of the witness thus is only partial, an objection on that ground should not be entertained until he is asked to testify to those matters as to which he is incapacitated. *Norris v. Bradshaw, supra;* 70 C.J., p. 371, §488. However, "Where a witness which a party tenders is competent as to certain facts, but not as a general witness, and he is objected to as incompetent,—the party tendering him should state what he proposes to prove by him, so that the court may know that it is proper; otherwise an appellate court cannot say that there is any error in refusing to allow him to testify." Thompson on Trials (2d ed.) vol. 1, p. 621, §678; *Stewart v. Kirk,* 69 Ill. 509. In *Whitsett v. Kershow,* 4 Colo. 419, concerning this subject, at page 426, we said: "When such party is offered as a witness, and before he is admitted to testify, it should be made to appear from his status in the case whether he is brought within any of the enumerated exceptions to the disqualifying section of the statute." Thus, since there is in the bill of exceptions neither a formal offer of competent evidence by claimant nor any disclosure that the testimony he might give would be within the statutory exceptions, error on the challenged ruling is not available to him.

Such diverse conclusions on this point as have been expressed in some jurisdictions are accounted for by the

circumstance that under statutes therein the *incompetency is not that of the witness,* as is legislatively declared in Colorado, but of *his testimony to particular facts.* The effect of this difference in terms is obvious. See Abbott's Trial Evidence (4th ed.), vol. 1, §125.

The judgment is affirmed.

MR. JUSTICE OTTO BOCK and MR. JUSTICE BURKE concur.