No. 14,802.

ESTATE OF LARSON.
LARSON *v*. POUDRE VALLEY NATIONAL BANK OF FORT COLLINS, ADMINISTRATOR ET AL.
(113 P. [2d] 686)

Decided May 12, 1941.

Mr. L. D. CUNNINGHAM, for plaintiff in error.

Mr. FRED W. STOVER, Mr. FANCHER SARCHET, Mr. JEROME SMITH, for defendants in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS cause is before us by writ of error to review a judgment of the county court of Larimer county dismissing a claim against the estate of Andrew Larson, deceased. The claim, in the sum of $5,000, was filed by Gustaf, decedent's brother, and dismissal was granted on motion, ore tenus, interposed by counsel for the estate at the close of the introduction of evidence on behalf of claimant. Reference will be made to the parties as decedent and claimant, or by name.

The facts, in substance, are as follows: In January 1918, decedent purchased a farm in Larimer county for about $25,000. Not having sufficient funds of his own to pay the purchase price, he borrowed $10,000 from the claimant, for which no note, or security for payment was given. However, the records of the Poudre Valley National Bank indicate that Andrew paid the interest and installments on the principal regularly until 1928, when a note secured by a second deed of trust, subject to a first deed of trust, was given. This first deed of trust secured a loan from the bank above mentioned (administrator of Larson's estate) in the amount of $5,340 to Andrew, the proceeds of which were used by him in paying off a bond in litigation on which he, with others, was an obligor. A note to claimant secured by second deed of trust was in the amount of $5,225. In July, 1932, the bank became concerned about its loan because of crop failures and the depression and called for payment. Andrew secured a loan from one Miller and paid his indebtedness to the bank, except the sum of $648.00 due it on open account. At the same time, he gave to claimant a new note secured by a second deed of trust in the amount of $5,671.74.

In June, 1933, Andrew conveyed an undivided one-half interest in the farm to claimant, subject to the in-

debtedness against it, and it is admitted by counsel for claimant that this transaction constituted a cancellation of the indebtedness and balanced the account between the brothers as of that date.

February 24, 1934, claimant gave a quitclaim deed of the premises to Andrew. In May, 1934, Andrew obtained a loan of $5,000 on the property from the Federal Land Bank and discharged his indebtedness to Miller.

Claimant resided with his brother on the property until June 5, 1939, when Andrew sold it to Carl D. Johnson subject to the Federal Land Bank mortgage, reserving to himself for life a small house on the premises. Andrew died intestate October 6, 1939. Claimant at present is over eighty years of age, Andrew being· slightly younger when he passed away.

Claimant's contention is that Andrew's estate owes him $5,000 which, he says, was the consideration for the execution of the quitclaim deed given to Andrew in February, 1934, and which Andrew agreed to pay him when the farm was sold. The consideration recited in this quitclaim deed is, "One dollar and other valuable considerations," with a note at the end of the description—"Consideration less than $100."

To support the claim, testimony was given by several witnesses who had conversed with Andrew shortly before his death, and who quoted him as follows: "I owe Gus $5,000.00." "I owe my brother." "I have to take care of Gus." "Five hundred dollars will be enough for Gus and me." This last statement was made in connection with the amount of annual payments to be made when the farm was sold. "I cannot borrow any more money from Gus, I owe him $5,000." "I cannot go to Sweden because I won't have anything left after I pay Gus what I owe him." Some of this testimony was given by disinterested people, but when cross-examined as to the nature of the claim, some admitted that it was essentially a moral obligation. These statements were admitted in evidence on the theory that they were dec-

larations by the deceased against interest, and as such they are not challenged.

■ The only issue in the case is whether the evidence was so clear and convincing as to warrant us in holding that the claim should have been allowed. See *Parker v. Hilliard,* 106 Colo. 187, 191, 102 P. (2d) 734. In approaching the problem, we must give due consideration to what must have been the inferences reached by the trial court, whose responsibility it was to observe the witnesses and weigh their testimony. While the court made no specific finding as to the effect of the informal statements allegedly made by Andrew to the friends who testified, the inference was that those statements, made more or less casually in their presence while visiting with decedent, were not so "clear and convincing" as to establish a legal obligation.

The principal testimony, which we think approaches the required clarity and convincingness, was that given by attorney Warren who for years had been familiar with the business affairs of the brothers. It was he who prepared the "supplemental and amended claim" after a conference with Gustaf. The first claim was specifically predicated on two loans of $2,500 and $5,000, respectively, which claimant had made to Andrew in 1918. The supplemented and amended claim was for $5,000 based on the proposition that that sum was the consideration for claimant's quitclaim deed to Andrew February 24, 1934. On cross-examination, Warren testified that it was very difficult to get information from claimant; that he was "hardly capable of much discussion of a matter of this kind"; and that he (witness) was not "here to represent that he made any very clear statements to me."

Another reasonable inference, which we think the court was justified in drawing was, that when claimant gave the quitclaim deed, he wanted to be rid of the entire matter. This conclusion at least is consistent with Andrew's statement that "Five hundred dollars will be

enough for Gus and me." We think, also, that this inference is consistent with the statement of claimant's counsel that "Claimant was not then [May, 1934] able to protect himself by taking over the farm and was too old to get a loan."

Finally, it is to be noted that these two brothers had been doing business together, and with many others, for nearly twenty years in connection with this property, and at the time of his death, Andrew had in his possession the notes given in payment for the farm by Johnson. If this claim was in fact legal it would have been a simple matter for Andrew to indorse these notes, or some of them, to claimant in liquidation thereof, or to have given claimant his own note as evidence of the claimed indebtedness. The final understanding between them, it appears to us, must have been, as the trial court apparently believed, that the annual payments would be "enough for Gus and me."

We see no sufficient reason for discussing the rule of merger in connection with this matter.

Counsel's contention, that since the motion sustained was in the nature of one for a nonsuit, the "undisputed evidence * * * requires the reasonable inference and conclusion that he had promised the very thing the law implies," reveals the weakness of his position. Reasonable inference in cases of this character are not enough. Evidence in support of the claim must be clear and convincing. *Parker v. Hilliard, supra.*

Judgment affirmed.

Mr. Justice Young and Mr. Justice Hilliard not participating.