No. 19,062.

MAX K. BERRY *v.* ASPHALT PAVING CO., ETC.,
AND JOHN H. KELLER.
(360 P. [2d] 980)

Decided April 3, 1961. Rehearing denied April 24, 1961.

Mr. W. H. ERICKSON, for plaintiff in error.

Mr. F. RICHARD HITE, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

THE parties appear here in the same order as in the trial court and will be referred to by name or as they appeared in the trial court.

Berry and Keller, desiring to go into the asphalt paving business, decided to form a corporation to carry on such a business and on June 13, 1955, they, together with one Connors, executed articles of incorporation for the Asphalt Paving Co., and on June 14, 1955, filed said articles with the Secretary of State. On June 15, 1955, the Asphalt Paving Co. acquired all the business assets of an existing asphalt paving concern for $300,000, making a down payment of $50,000 and executing its promissory note for the balance. Although the articles of incorporation were filed with the Secretary of State on June 14, 1955, it is agreed that prior to July 31, 1955, no stock was issued nor had there been any formal meeting of the board of directors.

Friction between Berry and Keller developed almost immediately and it soon became evident that this incompatibility dictated a termination of their business relationship. Discussions followed as to which one would "buy out" the other, and these culminated in a letter agreement between Berry and Keller, which agreement reads, in part, as follows:

"Denver, Colorado
July 30, 1955.

"Mr. Max K. Berry, Denver, Colorado.

"Dear Mr. Berry: Pursuant to our conversation of today, I make you the following proposal:

"On or before August 5, 1955, I will provide you with the sum of $27,500.00 and you shall transfer to me all of

*your interest, whatever it may be, in and to Asphalt Paving Co.,* a corporation.

\* \* \*

"James M. Connors, accountant, is at this time preparing a monthly financial statement of Asphalt Paving Co. and in the event such statement as prepared by Mr. Connors shows an operating profit up to July 31, 1955, you are to receive your proportionate share of such profit, on or before September 15, 1955.

"In the event the foregoing is as you understood our conversation, will you be good enough to sign the acceptance contained at the bottom of this letter.

Yours very truly,<br>/s/ John H. Keller

"Approved: /s/ H. R. Hindry, Attorney for Max K. Berry. /s/ Thomas K. Hudson, Attorney for John H. Keller." (Emphasis supplied.)

It is agreed that Berry has fully complied with the foregoing letter agreement. Berry in turn admits that Keller has also fully complied therewith, except that he has failed to pay Berry one-half of the operating profit from June 15, 1955, to July 31, 1955, as provided for by their agreement. In this regard the record shows that Connors determined there was an operating profit up to July 31, 1955, of $1,088.72 and accordingly a check for one-half that amount ($544.36) was delivered to Berry who accepted the check but refused to cash it, asserting that the operating profit was improperly determined. These facts outlined above were established by plaintiff's evidence.

Berry by his amended complaint makes three separate claims against the two defendants and interspersed throughout all claims he variously and redundantly alleges that his was actually a partnership relationship with Keller and that upon dissolution of their partnership he was entitled to a complete accounting; that a fiduciary relationship also existed and not only was he entitled to an accounting but also to the imposition of a

constructive trust and an equitable lien on their jointly acquired properties; and that defendant breached their letter agreement in that the determination made by Connors of operating profit failed to take into account opening and closing inventories of crushed gravel and oil and also that the accountant erred in his determination because he included a use tax as a part of the operating expense.

At the conclusion of the plaintiff's evidence defendants moved to dismiss. These motions after extended argument were granted and judgments of dismissal duly entered. Plaintiff now seeks review of these judgments by writ of error.

It is unnecessary to determine whether the relationship between Berry and Keller was one of joint venturers or partners, as claimed by Berry, or whether their interests were merged with that of the corporation, whether it be deemed a de facto or a de jure corporation. For regardless of the precise nature of their relationship, when controversy and bickering between the two suggested a dissolution of such relationship, it was mutually agreed that one should "buy out" the other, and subsequent discussions culminated in a written agreement signed by Berry and Keller and their respective attorneys. Accordingly, their rights and responsibilities were fixed by this agreement, and such rights as Berry may have against Keller as a result of their business relationship must necessarily be found within its terms. It should be noted that plaintiff does not seek to change the agreement and obtain reformation on the ground of mutual mistake or unilateral mistake and fraud, nor does he desire rescission on the ground that the writing is uncertain or indefinite in its terms. Rather he affirms the contract and essentially bases his complaint on an alleged breach thereof.

Defendant Asphalt Paving Co. is not a signatory to the agreement and was not otherwise involved. Hence its motion to dismiss was quite properly granted.

The trial court was equally correct in holding that plaintiff failed to establish a prima facie case against Keller for breach of the agreement. By its terms Keller agreed to pay Berry the sum of $27,500, subject to certain minor adjustments not the subject of controversy. It is admitted that plaintiff has received this sum. Also, by their agreement, each recognized that Connors, an accountant, was preparing a monthly statement to determine the operating profit of Asphalt Paving Co. up to July 31, 1955. Neither party deemed it necessary to give Connors written instructions as to the various factors to be considered in preparing such statement, presumably each being satisfied that he would follow accepted accounting practice. Both then agreed that *if* Connors' financial statement showed there was an operating profit for the short period of time they were engaged in the asphalt paving business (about 45 days), each would receive his proportionate share. Connors' statement shows that the operating profit amounted to $1,088.72 and one-half of that amount was remitted to Berry by check. Instead of showing that Keller breached their agreement, actually the plaintiff's own evidence establishes that the defendant fully complied with it.

Connors is probably not an arbitrator under the common law or statutory definition of that term, but his role as spelled out in the letter agreement suggests something closely akin thereto. In any event both Berry and Keller, each with his attorney at his elbow, saw fit to empower Connors to determine without any instructions from them the operating profit of the Asphalt Paving Co. with the understanding that such profit would be divided equally. Their agreement is clear and unambiguous and under such circumstances, in the absence of fraud or bad faith, the accountant's determination is final and not subject to review. See *Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc.,* 112 Colo. 155, 147 P. (2d) 828; *Western Oil Fields, Inc. v. Rathbun,* 250 F. (2d) 69; *Electric Power Construction Co. v. Allen,*

*Lane & Scott,* 367 Pa. 319, 80 A. (2d) 799, and *Cohen v. Pucci,* 378 Pa. 571, 107 A. (2d) 763.

*Brennan v. Brennan,* 164 Ohio St. 29, 128 N.E. (2d) 89 presents a factual situation similar to that in the instant case. In that case the Brennan brothers decided that they were incompatible from a business standpoint and it was determined that one would purchase the stock of the other. It was also expressly agreed their accountant would determine the book value of the stock. Later, the brother who sold his stock was dissatisfied with the determination made by the accountant and he sought an additional sum of money on the ground that the accountant made certain errors in his determination of the book value of the shares of stock. Under these circumstances it was held that the determination made by the accountant in the absence of fraud or bad faith was binding and could not be impeached on the grounds of alleged error. In this same connection see the annotation in 50 A.L.R. (2d) at page 1259, et seq.

██ Berry argues that notwithstanding their agreement he is somehow nevertheless entitled to an accounting and presumably one-half of the crushed gravel and oil inventories. There is no provision of agreement to support such claim. On the contrary the agreement is clear, complete and unambiguous and by its terms Berry agreed to accept a named sum for all his interest in the paving company, "whatever it might be." Upon acceptance of the consideration he divested himself of any right or claim to the assets or property of the company which he might otherwise have asserted. In holding that plaintiff's rights against Keller were those only set forth in agreement, nothing more and nothing less, the trial court was correct.

██ Having determined that the trial court was correct in holding that plaintiff failed to establish prima facie that Keller breached their agreement, and that actually plaintiff's own evidence affirmatively showed that Keller had in fact complied with their agreement,

plaintiff's other assignments of error become moot. For example, the ruling of the trial court that one of counsel of record for plaintiff should under the circumstances have been permitted to withdraw and then testify need not be considered in too much detail, since the error, if any, is immaterial. When one of plaintiff's counsel sought to withdraw and testify it would have been better practice for plaintiff to make a rather detailed offer of proof so as to specifically inform the trial court of the testimony sought to be introduced to the end that the trial court would have been in a better position to rule on its materiality and competency. See *Johnston v. Johnston,* 123 Colo. 28, 224 P. (2d) 949; and *Parker v. Hilliard,* 106 Colo. 187, 102 P. (2d) 734. However, in the instant case there was no suggestion by plaintiff that this attorney if permitted to testify would have offered testimony which would aid plaintiff in his unsuccessful effort to enlarge upon the rights created by a contract into which he voluntarily entered. As was noted, supra, in the absence of fraud, the accountant's determination was final. The same observation would also apply to the ruling of the trial court wherein it excluded certain business records of the Asphalt Paving Co. These records were sought to be introduced in an effort to show error on the part of the accountant. Under these circumstances such is not permitted.

In his final effort to reverse the judgment of the trial court the plaintiff contends that the trial judge was biased, prejudiced and should have disqualified himself. The motion to disqualify was not filed till for all practical purposes the trial was concluded. When the trial court granted defendants' motion to dismiss made at the conclusion of plaintiff's case the matter was continued for about ten days to permit defendants to prepare a written order. The motion to disqualify was filed after the motion to dismiss had been granted, but before the written judgment of dismissal was signed by the court, and was based on the alleged fact that the trial judge

made some derogatory comment concerning plaintiff's counsel and the manner in which he presented his case. These remarks were made off the bench and in private to a court attache who mistakenly felt compelled to carry these remarks to counsel for plaintiff. The trial court refused to disqualify himself and under the circumstances of the case we think he was right.

Other assignments of error, in view of our holdings as to the force and effect of the agreement between the parties, need not be the subject of comment.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DOYLE concur.