## No. 10,971.

### SWEDISH EVANGELICAL FREE CHURCH OF THE UNITED STATES OF AMERICA v. BENSON.

Decided June 1, 1925. Rehearing denied June 22, 1925.

Action to enforce alleged contract to devise property. Judgment for plaintiff.

## *Reversed.*

1. SPECIFIC PERFORMANCE—*Contracts to Devise Property.* Although courts have power to enforce specific performance of oral or written contracts to devise property, they do not do so except upon the strictest and most satisfactory proof, and where plaintiff can be compensated in damages for the injury sustained by refusal of performance, specific performance will not be decreed.

2. APPEAL AND ERROR—*Admission of Testimony.* As a general rule, where trial is to the court without a jury, although inadmissible testimony is received, the findings will not be disturbed on review if they are sustained by admissible testimony in the record.

3. WITNESSES—*Competency.* An interested party may testify to the loss of written documents evidencing a transaction with a de-

cedent, but he may not testify as to the contents of such instruments.

4.  APPEAL AND ERROR—*Insufficient Evidence.* In an action to enforce an alleged contract for the devise of property, evidence reviewed and held insufficient to sustain a judgment for plaintiff.

5.  CONTRACTS—*Agreement to Devise Property—Evidence.* Evidence of contracts to devise property must be strong and unequivocal.

6.  EVIDENCE—*Statements of Persons Deceased.* Oral testimony of oral statements against interest made by deceased persons is uniformly considered the weakest of all evidence.

*Error to the District Court of Weld County, Hon. Neil F. Graham, Judge.*

Mr. WALTER E. BLISS, Mr. RALPH L. DOUGHERTY, for plaintiff in error.

Mr. JOSEPH C. EWING, Mr. WORTH ALLEN, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

RUTH SWANSON brought this action in equity against the executor of the estate of John Henderson, deceased, and among other parties joined with him as a defendant the Swedish Evangelical Free Church of the United States, the sole legatee and devisee under Henderson's will. In view of our conclusion on the merits of the case it is not important, even though it might be difficult, to denominate the action. No objection by motion or demurrer was interposed by any of the defendants that causes of action or parties defendant had been improperly joined or that the complaint was otherwise vulnerable. We shall not digress to inquire. The real object of the action, whatever its name, is to make the plaintiff the owner of this estate as the result of an alleged contract between her

and the decedent by which, upon a sufficient consideration, he promised to devise it to her. The court found for the plaintiff and upon its findings rendered a decree that such a contract was made, specifically enforced it by impressing upon the estate in the hands of the executor a trust in favor of the plaintiff, and required the executor to account to the plaintiff the same as if she had been made the sole devisee and legatee under the will, and the entire estate was set over to the plaintiff, and the church was required as devisee to convey to her by quitclaim deed all the property of the estate. It is well to note that the legal effect of this decree is not only to cancel the will and to enforce the alleged contract, but also to compel the executor to administer the estate for the benefit of the plaintiff. One practical effect—assuming that in any event it can be sustained—would naturally be to put a stop to any further effort by the executor to defend. That probably accounts, at least in a measure, for the fact that all of the parties who were joined as defendants below, except the church, have apparently acquiesced in the decree. At least only the church, the sole legatee and devisee, is prosecuting this writ of error.

Though courts have the power to enforce specific performance of oral or written contracts to devise lands and other property, they do not do so except upon the strictest and most satisfactory proof thereof and that such contracts rest upon sufficient consideration, and where, in the circumstances, the plaintiff cannot be compensated by damages for the injury sustained by refusal of the defendant to perform. This hearing was before the court without a jury. As the general rule is that in such cases, even though the court may have admitted inadmissible testimony, its findings will not be disturbed if they are sustained by other admissible evidence in the record; nevertheless, we are impressed with the fact that the court was very liberal in admitting evidence tendered by the plaintiff and in one instance testimony of a witness was rejected, while similar testimony of another witness was

received.   The record discloses that the findings of the
court in some particulars were materially affected by ques-
tionable evidence.   For example, the plaintiff, whose coun-
sel admitted that she was not competent to testify, since
the principal defendant was the sole legatee and devisee
of the decedent, was permitted to file her own affidavit,
ostensibly to show that the letters on which she relied
to prove the alleged contract were lost or destroyed, and
as a foundation for oral testimony, as to their contents,
of other witnesses who had seen and read them, yet this
affidavit improperly set forth their contents.   While there
are authorities apparently holding that an interested party
may testify as to the loss of written documents evidencing
a transaction with a decedent, he may not, however, testify
as to the contents of such lost instruments.   40 Cyc. p.
2328.   If the exigencies so required it might be that the
error of the court in this particular would justify a re-
versal, even though plaintiff's counsel sought to limit the
affidavit to the loss, and not to the contents, of the letters.
But as we have reached the conclusion, and are entirely
satisfied with it, that if all the evidence which the court
permitted the plaintiff to introduce was legally admissible,
it falls far short of establishing either the making of the
alleged contract, or that there was a sufficient considera-
tion therefor, or that plaintiff made compliance therewith
on her part, it shows that damages resulting from the
breach of contract, if any, could be compensated for in
money.

It would serve no useful purpose to state the evidence
in full.   We have read the entire record and have no hesi-
tation in declaring its marked insufficiency.   Stated briefly,
the plaintiff's complaint, to which there was supporting
testimony, alleges that in 1918 she was living in the state
of Massachusetts earning her living as a domestic servant.
She was of Swedish extraction and had come to this coun-
try in 1909.   She was a niece of the wife of John Hender-
son, decedent.   During the first part of the year 1918 she
received various letters, at least four or five, signed by

Henderson and his wife, in which they promised that if she would leave her home in Brockton and give up her contemplated trip to Sweden and make her abode in the city of Greeley and thereafter make frequent, numerous and various visits to them and confer upon them that companionship and society enjoyed only by blood relationship, that their entire estate at the death of the last survivor of them would be given to her. She says that acting upon such promise she gave up her trip to Sweden and her home at Brockton and came to Greeley to live and soon after her arrival entered domestic service with other parties and that she made frequent visits to her uncle and aunt and in other respects complied with the alleged contract. About two years after she came to Greeley she was married and went to live with her husband upon his farm about ten miles from Greeley and afterwards at different times she had visited at the Hendersons, during the lifetime of her aunt whose death preceded that of the husband by two or three years, but not often thereafter. She says that when she left Brockton to come to Greeley because of the limited capacity of her trunk she destroyed these Henderson letters that evidenced the alleged contract. Three witnesses, some interested, testified to having seen and read them. Neither of these witnesses agrees with either of the other two as to their contents. One of them testifies that the lost or destroyed letters contained a promise that the Henderson property would be given to the plaintiff if she came out to visit the Hendersons; another that the property would be given if plaintiff came to Greeley where she could visit them; another that the property would be given if plaintiff took up her abode and residence in the city of Greeley. According to the plaintiff's complaint the Henderson letters which were lost contained statements that there was plenty of jobs in Greeley for the plaintiff and a friend who came with her and wages were higher than in Massachusetts. We have made a synopsis of this evidence chiefly for the purpose of showing its character and its lack of clearness as to

what the contract really was and to show, not only the improbability of the plaintiff's claim but also the legal insufficiency of the evidence to justify enforcement. A number of witnesses living near Greeley, some of them interested, others not, testified that they had heard Mr. and Mrs. Henderson in their lifetime at different times say that the plaintiff was to get their property when they died. This testimony we take it was admitted as tending to show that the alleged contract pleaded was made. If so, numerous disinterested witnesses for the defendant testified that they had heard the Hendersons say that when they died none of their relatives would get their property, which they acquired by their own labor and could dispose of as they saw fit, but that it should go to this church for they were religious people and their relatives were not. This would have an equal tendency to show that no such contract was made.

To sum up we say that the evidence discloses that there is just as much probability that the plaintiff came to Greeley because she could get a better job and at higher wages than she was getting in Massachusetts, as that her coming was induced by a promise of a devise of the Henderson estate. By one of the most solemn acts that one can perform with respect to his property John Henderson, an upright man as the record indicates, by his last will gave his entire estate, except one or two small legacies, to this mission church. To accomplish a cancellation of this will much more explicit and unequivocal evidence is required than that produced by the plaintiff. If, however, the contract was as she alleges, there was no sufficient or full performance. The complaint alleges that the contract did not contemplate that the plaintiff should live with the Hendersons or render them any service, but only to make them frequent visits and give them the pleasure of her occasional companionship, while the proof is that after her marriage within two years after her arrival and removal to another community she did not and could not adequately or fully comply with the terms of the contract on her

part, even though the Hendersons made no objection to the marriage. Furthermore, if the contract was made, plaintiff's injury could be fully compensated in money. The chief damage would seem to be the amount of the expense of her journey to Colorado and possibly some other incidental expense attending a change of residence. Authorities from other jurisdictions need not be cited. By the great weight of authority, the showing here was entirely insufficient to justify the decree in the plaintiff's favor. In *Fagan v. Fisher*, 74 Colo. 473, 222 Pac. 647, the court said that evidence of such contracts must be strong and unequivocal. To the same effect is *Allen v. Sacket*, 76 Colo. 431, 231 Pac. 1110. The material testimony in the instant case is largely that of persons who testified to oral statements or admissions of decedent against his interest. Oral testimony of oral statements against interest made by deceased persons is uniformly considered the weakest of all evidence. The witnesses who testified as to the contents of the letters of the decedent had not seen the letters for more than five years. It is singular that they could remember with such remarkable clearness the contents of letters which did not concern them personally. Perhaps it is not so strange that not one of them agreed with any of the others as to the consideration for the promise. It is a significant circumstance, as bearing on her veracity, if plaintiff was induced to give up her contemplated trip to Sweden and her home in Brockton and to come to Greeley to live as the result of a promise contained in these letters, that she destroyed the written and best evidence of that promise on the ground that a few letters occupied too much space in her trunk. A person of enough intelligence to enter into such a contract would likely preserve with great care the evidence of the promise which she says was made to her. In *Fellhauer v. Fellhauer*, 75 Colo. 358, 225 Pac. 844, a case where this court upheld a decree refusing to enforce specific performance of an oral agreement devising farm lands, the showing was much more satisfactory than the showing

in this case in behalf of the plaintiff. This is not a case where this court is substituting for the findings of the trial court its own findings upon disputed evidence. Even on the assumption that the witnesses in behalf of plaintiff testified to the truth, and that there was no contradictory evidence, her showing is manifestly insufficient to establish her cause of action. The decree of the trial court is, therefore, reversed and the district court is instructed to set aside its decree and to dismiss the action.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.