**RASH v. PEOPLES DEPOSIT BANK & TRUST CO. et al.**
**No. 672.**

United States District Court
E. D. Kentucky.
March 20, 1950.

J. A. Edge, and Lena M. Craig, Lexington, Ky., for plaintiff.

William T. Baldwin and Raymond Connell, Paris, Ky., for defendants.

FORD, Chief Judge.

The plaintiff, Mrs. Nell Rummans Rash, seeks specific performance of an alleged lost contract claimed to have been executed by her and Clarence Jones Wright, deceased, in May 1926, by the terms of which she claims he agreed, in consideration of certain services to be rendered by her until his death "that he would by will or other instrument confer upon and vest in her the fee simple title and ownership of all his estate."

Clarence Jones Wright, a bachelor, residing in Bourbon County, Ky., died, testate, on October 24, 1947. By his last will and testament he bequeathed $5,000 to his brother J. W. Wright and the same amount to each of his nieces, Clara Mae Dycus and Virginia Boswell. The remainder of his property, both real and personal, he devised to the defendant Wilson Barlow, saying: "I do this because Wilson Barlow was reared in my home & I feel toward him as much as if he were my own son." The will was dated June 24, 1921, and was wholly in the handwriting of Mr. Wright. It was admitted to probate by the Bourbon County Court on November 4, 1947, and on the same date the defendant Peoples Deposit Bank & Trust Company qualified as executor of the estate under the will.

At the time of his death Mr. Wright resided upon and owned a well improved farm of approximately 485 acres located about three miles from Paris, Ky., on the main highway leading to Lexington. The farm is probably worth considerably more than $100,000. For many years Mr. Wright had engaged in general farming and in breeding and selling purebred Southdown and Hampshire sheep.

By her original complaint, filed in this Court on January 26, 1949, in addition to appropriate allegations showing jurisdiction on the ground of diversity of citizenship, plaintiff set out the terms of the claimed agreement, alleged that she fulfilled her obligations thereunder, filed a copy of Mr. Wright's will claimed to be in violation of the agreement and sought judgment of the Court vesting her with title and possession of all his real and personal estate. The executor and Wilson Barlow, the principal devisee, are named as defendants.

On February 11, 1949, the defendants moved the Court to require plaintiff to make her complaint more definite and certain by stating whether the contract referred to in the complaint was oral or written. The motion was sustained and on February 23, 1949, plaintiff, by her counsel, filed her amended complaint stating that "the contract sued on is wholly oral". On March 7, 1949, defendants filed an amended answer pleading and relying upon the statute of frauds of Kentucky, KRS § 371.010, which, by its terms, precludes the character of relief sought by the plaintiff in respect to real estate, unless the contract relied upon be in writing and signed by the party to be charged or his authorized agent. Rudd v. Planters Bank & Trust Co., 283 Ky. 351, 141 S.W.2d 299. Thereafter, on May 6, 1949, a pre-trial conference was held and the case was assigned for trial. However, on August 4, 1949, the plaintiff filed an amended complaint asserting for the first time that the contract relied upon was in writing and that the writing had been lost. With this amendment she filed her affidavit purporting to explain or excuse her failure to sooner rely upon or inform her attorneys of this important fact.

The case has been tried, briefed and submitted for judgment only upon the issues relating to the alleged written contract and the right of plaintiff to specific performance thereof. Neither by pleading nor proof does the plaintiff show or claim herself entitled to any other character of relief.

There is no doubt as to the jurisdiction of a Court of Equity to enforce specific performance of a clearly established contract of the kind here in question, but, in harmony with the general rule, the Court of Appeals of Kentucky has taken pains to emphasize that in a case of this character involving a muniment of title to real estate, the Court entertains a type of jurisdiction which is fraught with such danger that it should be exercised with the greatest caution for the reason that the absence of the alleged writing renders proof of its existence and establishment of its provisions entirely dependent upon the fallibility of human memory which is often made less dependable by the lapse of time and the frailty of human nature. The obvious temptation, especially where a fortune is at stake, to fabricate evidence which cannot be directly controverted after the death of the party charged, presents a situation so pregnant with opportunity for injustice and fraud that every principle of public policy demands that proof of the former existence, execution and delivery of the writing, its loss and its content should be of the clearest, most conclusive and satisfactory nature, and if there be reasonable doubt of these essential facts, equity will not grant specific performance for fear of doing a greater wrong than by denying it. Suter v. Suter, 278 Ky. 403, 406-407, 128 S.W.2d 704; Chilton's Adm'r v. Shelley, 243 Ky. 576, 580-581, 49 S.W.2d 305; Broughton v. Broughton, 203 Ky. 692, 696, 262 S.W. 1089.

The plaintiff's belated assertion of her claim to the existence of a written contract, which, according to her affidavit, was neither relied upon nor disclosed to her attorneys until after she was confronted with the defendants' plea under the statute of frauds, is in itself a circumstance sufficient to create more than slight suspicion and doubt as to the genuineness of her claim. Her explanation of her failure to disclose all the facts to her attorneys seems a rather shallow excuse for it is hardly conceivable that the fact of the reduction of the alleged contract to writing, if true, would not have been revealed in the interviews and consultations between counsel, client and witnesses essential to the institution of such important litigation as this.

Another circumstance, which seems no less significant in view of plaintiff's claim that her copy of the contract was lost in 1940 and that she and her daughter were well aware that an identical executed copy was in the possession of Mr. Wright and was kept by him among his papers at his home, is the fact that plaintiff and her daughter Nellie R. (now Mrs. Walter Evans) remained in Mr. Wright's residence for about three weeks after his death and for approximately ten days after his will was probated and his executor qualified, and, although for this considerable time after the death of Mr. Wright they apparently had unobstructed access to all parts of his home, there is nothing in the testimony to show that before their departure either of them made any effort to find such a paper at the place where it was most likely to be found, or that they took any steps to inform the executor of the existence of a document so valuable and important to them among Mr. Wright's possessions or called upon the executor to make a search for it.

While there is no fixed measure of the degree of diligence required in making search for a lost document before being entitled to introduce secondary evidence in respect to its existence and content, it would seem that good faith on the part of the party alleging the loss would require such reasonable search as the nature of the case would suggest. Simpson & Co. v. Dall, 3 Wall. 460, 461, 475, 70 U.S. 460, 18 L.Ed. 265.

To meet the requirement of proof of "the clearest, most conclusive and satisfactory nature" in respect to the existence, content and loss of the alleged contract, as demanded by the law of Kentucky, the plaintiff relies chiefly upon the testimony of her sister, Mrs. Jennie Ellis Thompson, and her daughter, Mrs. Walter (Nellie R.) Evans.

At the time of her testimony in this case, Mrs. Thompson was more than seventy years of age. She, nevertheless, professed the ability to unerringly detail from memory the precise facts and circumstances under which the alleged contract was executed as well as to state its content after the lapse

of almost a quarter of a century. She states, in substance, that in May 1926 in a Tea Room which she operated at Paris, Ky., in which the plaintiff was her silent partner and then residing with her, Mr. Wright wrote and executed two copies of the alleged contract. The fallibility of her memory is strikingly illustrated by the conflict of her testimony here to the effect that upon the execution of the contract in May 1926 the plaintiff, her mother and daughter took up their residence at the home of Mr. Wright and the plaintiff thereafter resided at his home for 21 years, with her testimony by her deposition on January 27, 1928 in her sister's divorce action, which was:

"29. Where is your sister now living? A. East Main Street, Lexington, Kentucky."

Her natural interest and concern for the cause of her sister in this case, so clearly evidenced by Mrs. Thompson while on the witness stand, together with the doubtful reliability of her memory, renders her testimony of slight probative value.

The testimony of Mrs. Walter (Nellie R.) Evans, the daughter and only child of the plaintiff, whose interest in her mother's success in this case is obviously no less than that of her mother, requires careful scrutiny before being accepted at face value. Her effort to minimize the extent of her mother's activities in connection with her employments, the duties of which, at various times, required plaintiff's absence from Mr. Wright's home while engaged in work in Kentucky, Ohio, West Virginia and Pennsylvania, is quite obvious. Her pointedly detailed account of the facts and circumstances under which her mother's contract was claimed to have been fortuitously lost when she and her mother were at State College, Pennsylvania in 1940, might be impressive but for the fact that, so far as the record shows, she never revealed such facts to Mr. Wright or sought to have him restore the loss by providing her mother another copy. In a conversation which she claims to have had with Mr. Wright in February 1942 she quotes him as saying, in reference to her mother's contract, "She has a contract". She also claims to have had two subsequent conversations with Mr.

Wright relative to her mother's contract, one of which she says occurred on June 8, 1945, and the other shortly before his death. In the latter conversation she quotes him as again saying: "Your mother has got her contract, and everything I have will be hers." In neither of these conversations does she say that she told or even intimated to Mr. Wright that her mother's copy of the contract had been lost for many years. Isn't it quite strange that, if it be true that her mother had a copy of the contract which was lost in 1940 and these conversations with Mr. Wright took place, she would not have made some mention of her mother's loss, some effort to secure another copy or some inquiry of him as to where his copy might be found and made available for the protection of her mother in the event of his death? These considerations, in addition to her vital interest in the litigation and the fact hereinbefore adverted to in respect to her departure, with her mother, from Mr. Wright's home without the showing of any effort whatever to find his copy of the writing, the importance of which to her and to her mother she could not have underestimated, seriously dilute the quality and lessen the weight of her testimony.

Other witnesses for the plaintiff, who claimed to have seen the alleged written contract and thoroughly acquainted themselves with its contents, are Mrs. Viola Yazell and Anna Lee Jackson. The obviously studied efforts of both these witnesses to fortify the plaintiff's case by precise testimony upon the critical point at issue makes their narratives seem more fantastic than real.

■ The plaintiff introduced several witnesses who professed to recall and relate from memory conversations with Mr. Wright tending to confirm the fact that he had a contract with the plaintiff and that she would receive his entire estate at his death. The inherent danger of misunderstanding or misinterpretation, as well as the facile opportunity for fabrication, has led the courts to ordinarily attribute slight reliability to such testimony. Purcell v. Miner, 4 Wall. 513, 518, 71 U.S. 513, 18 L.Ed. 435; Sharpe v. Wilson 181 Iowa 753,

161 N.W. 35; Russell v. Sharpe, 192 Mo. 270, 91 S.W. 134, 111 Am.St.Rep. 496. Some courts have gone so far as to say that it is the weakest kind of evidence. Fagan v. Fisher, 74 Colo. 473, 222 P. 647; Swedish Evangelical Free Church of United States of America v. Benson, 77 Colo. 370, 237 P. 165. The mere expression of an intention to make a gift or devise even though it be motivated by appreciation for services rendered does not establish an express contract or an intention to be legally bound. Adams' Adm'rs v. Adams, 264 Ky. 543, 545, 95 S.W.2d 31.

■ The record makes it clear that at a time when the plaintiff was homeless and in desperate need of help, Mr. Wright provided a comfortable home for her, her mother and her daughter. He also provided for her daughter's education. In return, when she was there, the plaintiff rendered such services in the household as are ordinarily incident thereto and to some extent assisted Mr. Wright in his business affairs. It is likewise clear that during the time the plaintiff regarded the Wright home as her home she engaged in considerable outside remunerative employments which from time to time required her to travel to various parts of Kentucky and other states.

The record contains several letters which were written by the plaintiff to Mr. Wright while she was engaged in following her employment in another State. These letters strongly tend to negative the idea that there was a subsisting business relationship between the plaintiff and Mr. Wright, or that Mr. Wright was obligated to her by contract or that she was thereby obligated to him.

After hearing and carefully observing the witnesses and considering their testimony in the light of all the attendant facts and circumstances, I am of the opinion that plaintiff has failed to establish by evidence of the "clearest, most conclusive and satisfactory nature" the existence, content or loss of the contract upon which she relies and consequently her claim should be denied.

Judgment will be entered accordingly.